**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re QUTOUTIAO, INC. SECURITIES LITIGATION | 1:20-cv-06707 |
| | **ORAL ARGUMENT REQUESTED** |
| This Document Relates To:<br><br>ALL ACTIONS. | |

**MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S**
**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

George S. Wang
Bo Bryan Jin
Shannon K. McGovern
Stephanie L. Hon
SIMPSON THACHER & BARTLETT LLP
425 Lexington Ave
New York, NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Defendants Qutoutiao, Inc. and Oliver Yucheng Chen*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 9

I.      PLAINTIFF FAILS TO PLEAD A SECTION 10(b) CLAIM ............................................ 9

        A.     THE COMPLAINT FAILS TO PLEAD A MATERIALLY FALSE OR MISLEADING STATEMENT OR OMISSION .................................................... 10

              1.     Illegal Advertisement Claims ................................................................. 10

              2.     Related Party Transaction Claims ............................................................ 15

              3.     Revenue Reporting Claims ..................................................................... 16

        B.     PLAINTIFF FAILS TO PLEAD FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER ............................................................................ 17

              1.     Plaintiff's "Group Pleading" of Scienter Is Impermissible ..................... 18

              2.     Plaintiff Fails to Allege Motive and Opportunity ................................... 18

              3.     Plaintiff Fails to Allege Facts that Constitute Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness ............................. 19

              4.     The Totality of the Allegations Do Not Support a Finding of Scienter .... 21

II.     PLAINTIFF FAILS TO PLEAD SECTIONS 11 AND 12(a)(2) CLAIMS .................... 21

        A.     PLAINTIFF'S SECTIONS 11 AND 12(a)(2) CLAIMS ARE SUBJECT TO THE SAME HEIGHTENED PLEADING STANDARDS—AND FAIL FOR THE SAME REASONS—AS HIS SECTION 10(B) CLAIM ..................................... 21

        B.     PLAINTIFF'S SECTIONS 11 AND 12(a)(2) CLAIMS SUFFER FROM OTHER FATAL DEFECTS ........................................................................... 23

III.    PLAINTIFF'S CONTROL PERSON CLAIMS FAIL AS A MATTER OF LAW .......... 25

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Arfa v. Mecox Lane Ltd.*,
No. 10 CIV. 9053, 2012 WL 697155 (S.D.N.Y. Mar. 5, 2012)................................................ 17

*Asay v. Pinduoduo Inc.*,
No. 18-CV-7625 (PKC), 2020 WL 1530745 (S.D.N.Y. Mar. 30, 2020)................................. 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................. 9

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ...................................................................................................... 10

*Barnes v. Osofsky*,
373 F.2d 269 (2d Cir. 1967) .................................................................................................... 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................. 9

*Caiafa v. Sea Containers Ltd.*,
No. 06 CIV 2565 (RMB), 2008 WL 11516813 (S.D.N.Y. May 15, 2008) ............................ 23

*Campo v. Sears Holdings Corp.*,
371 F. App'x 212 (2d Cir. 2010)............................................................................................. 20

*Carpenters Pension Trust Fund v. Barclays PLC*,
750 F.3d 227 (2d Cir. 2014) .................................................................................................... 25

*Chiarella v. U.S.*,
445 U.S. 222 (1980) ................................................................................................................. 10

*City of Omaha Police and Fire Ret. Sys. v. Evoqua Water Technologies Corp.*,
450 F. Supp. 3d 379 (S.D.N.Y. 2020) ..................................................................................... 18

*Cortina v. Anavex Life Sciences Corp.*,
No. 15-CV-10162 (JMF), 2016 WL 7480415 (S.D.N.Y. Dec. 29, 2016)................................ 19

*Credit Suisse First Boston Corp. v. ARM Financial Group, Inc.*,
No. 99 CIV 12046 WHP, 2001 WL 300733 (S.D.N.Y. Mar. 28, 2001)................................. 25

*De Jesus v. Sears, Roebuck & Co., Inc.*,
87 F.3d 65 (2d Cir. 1996) ........................................................................................................ 9

*DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*,
323 F. Supp. 3d 393 (S.D.N.Y. 2018) ............................................................................... 10, 12

*ECA & Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
 553 F.3d 187 (2d Cir. 2009) ................................................................................................ 19

*Emerson v. Mutual Fund Series Trust*,
 393 F. Supp. 3d 220 (E.D.N.Y. 2019) ................................................................................. 25

*Fidel v. Rampell*,
 No. 02-61258-CIV, 2005 WL 5587454 (S.D. Fla. Mar. 29, 2005) ...................................... 20

*Furlong Fund LLC v. VBI Vaccines, Inc.*,
 14-Cv-9435, 2016 WL 1181710 (S.D.N.Y. Mar. 25, 2016) (Stein, J.) .............................. 3, 9

*Garber v. Legg Mason, Inc.*,
 347 F. App'x 665 (2d Cir. 2009) ........................................................................................... 3

*Ho v. Duoyuan Global Water, Inc.*,
 887 F. Supp. 2d 547 (S.D.N.Y. 2012) .................................................................................. 23

*In re Alcatel Sec. Litig.*,
 382 F. Supp. 2d 513 (S.D.N.Y. 2005) .................................................................................. 22

*In re China Valves Tech. Sec. Litig.*,
 979 F. Supp. 2d 395 (S.D.N.Y. 2013) .................................................................................. 17

*In re China Valves Tech. Sec. Litig.*,
 No. 11 CIV 0796 LAK, 2012 WL 4039852 (S.D.N.Y. Sept. 12, 2012) ............................... 17

*In re Citigroup Inc. Sec. Litig.*,
 753 F.Supp.2d 206 (S.D.N.Y. 2010) (Stein, J.) .......................................................... 18, 22, 24

*In re Citigroup, Inc. Secs. Litig.*,
 330 F. Supp. 2d 367 (S.D.N.Y. 2004) .............................................................................. 12, 20

*In re DDAVP Direct Purchaser Antitrust Litig.*,
 585 F.3d 677 (2d Cir. 2009) ................................................................................................. 18

*In re Deutsche Telekom Ag Sec. Litig.*,
 No. 00 CIV 9475 SHS, 2002 WL 244597 (S.D.N.Y Feb. 20, 2002) .............................. 24, 25

*In re Eastman Kodak Co.*,
 No. CIV.A.6:05-CV-6326, 2006 WL 3149361 (W.D.N.Y. Nov. 1, 2006) ............................ 9

*In re Elan Corp.*,
 No. 02CIV.865(RMB)(FM), 2004 WL 1305845 (S.D.N.Y. May 18, 2004) ......................... 22

*In re Francesca's Holdings Corp. Sec. Litig.*,
 No. 13-CV-6882 (RJS), 2015 WL 1600464 (S.D.N.Y. Mar. 31, 2015) ................................ 16

*In re Fuwei Films Sec. Litig.*,
   634 F. Supp. 2d 419 (S.D.N.Y. 2009) ........................................................................ 24

*In re GeoPharma, Inc. Sec. Litig*.,
   339 F.Supp.2d 432 (S.D.N.Y. 2005) .......................................................................... 19

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
   No. 15 CIV. 6369 (JFK), 2018 WL 1449206 (S.D.N.Y. Mar. 23, 2018) ............................... 15

*In re JP Morgan Chase Sec. Litig.*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005) (Stein, J.), *aff'd* 553 F.3d 187 (2d Cir. 2009)......... 22, 23

*In re Pfizer Inc. Shareholder Deriv. Litig*.,
   722 F. Supp. 2d 453 (S.D.N.Y. 2010) ........................................................................ 14

*In re Puda Coal Sec. Inc.*,
   No. 11 Civ. 2598 (KBF), 2013 WL 5493007 (S.D.N.Y. Oct. 1, 2013) .................................. 23

*In re Sotheby's Holdings, Inc.*,
   No. 00 CIV. 1041 (DLC), 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) ............................... 20

*In re Ultrafem Inc. Securities Litigation*,
   91 F. Supp. 2d 678 (S.D.N.Y. 2000) ......................................................................... 23

*Inchen Huang v. Higgins*,
   443 F. Supp. 3d 1031 (N.D. Cal. 2020) ................................................................... 20

*Jiajia Luo v. Sogou, Inc.*,
   465 F. Supp. 3d 393 (S.D.N.Y. 2020) ............................................................ 12, 14, 23

*Kinsey v. Cendant Corp.*,
   No. 04 Civ. 0582, 2004 WL 2591946 (S.D.N.Y. Nov. 16, 2004)......................................... 21

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
   No. 07 Civ. 0976 (LAP), 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008) ............................... 25

*Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*,
   724 F. Supp. 2d 447 (S.D.N.Y. 2010) ........................................................................ 20

*Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*,
   430 F. App'x 63 (2d Cir. 2011) ................................................................................. 20

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)............................................................................... 15, 18

*Pinter v. Dahl*,
   486 U.S. 622 (1988) .............................................................................................. 24

*Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*,
 721 F.3d 95 (2d Cir. 2013) ................................................................. 24

Rombach *v. Chang*,
 355 F.3d 164 (2d Cir. 2004) ................................................... 19, 21, 22

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
 505 B.R. 135 (S.D.N.Y. 2013) ................................................................. 9

*Slayton v. Am. Exp. Co.*,
 604 F.3d 758 (2d Cir. 2010) ................................................................. 21

*Stadnick v. Vivint Solar, Inc.*,
 No. 14-CV-9283 (KBF), 2015 WL 8492757 (S.D.N.Y. Dec. 10, 2015), *aff'd*, 861 F.3d 31 (2d
 Cir. 2017) ................................................................. 24

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
 547 F.3d 406 (2d Cir. 2008) ................................................................. 3

*Tabor v. Bodisen Biotech, Inc.*,
 579 F. Supp. 2d 438, 445 (S.D.N.Y. 2008) ................................................................. 16

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
 551 U.S. 308 (2007) ................................................... 10, 18, 21

*The Penn. Ave. Funds v. Inyx Inc.*,
 No. 08-cv-6857 (PKC), 2010 WL 743562 (S.D.N.Y. Mar. 1, 2010) ................................ 18

*Vladimir v. Bioenvision Inc.*,
 606 F. Supp. 2d 473 (S.D.N.Y. 2009) (Stein, J.) ................................ 9, 10

*Yi Xiang v. Inovalon Holdings, Inc.*,
 327 F.R.D. 510 (S.D.N.Y. 2018) ................................................................. 24

**Statutes**

15 U.S.C. § 78u-4 ................................................................. 10

Defendants Qutoutiao, Inc. ("Qutoutiao" or the "Company") and Oliver Yucheng Chen ("Chen") submit this memorandum of law in support of their motion to dismiss Lead Plaintiff James Pappas's ("Plaintiff") consolidated amended class action complaint (the "Complaint") pursuant to Rule 12(b)(6) of Federal Rules of Civil Procedure.

## INTRODUCTION

Qutoutiao is a Chinese company that delivers customized feeds of articles and short videos to mobile users.  It derives its revenues primarily through the more than 2 billion advertisements placed per day on its applications.  The Company operates in a fast-evolving sector that faces significant uncertainties with regard to China's amorphous and highly subjective advertisement regulations.  Qutoutiao candidly warned investors that it was unable to assure compliance with those regulations, which could result in, among other things, fines, reputational harms, and removal of its applications from app stores.  These fully-disclosed risks materialized in July 2020 when a Chinese state-controlled broadcaster reported a small number of suspected illegal advertisements found on Qutoutiao's application.  In the wake of this significant publicity, Qutoutiao's flagship application was temporarily removed from app stores, which negatively affected its operational and financial results.

This lawsuit inevitably followed, asserting claims under both the Securities Exchange Act and the Securities Act.  Because the Complaint sounds in fraud, all of Plaintiff's claims are subject to the heightened pleading standards under Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), including the requirement that Plaintiff allege particularized facts giving rise to a strong inference of scienter.  The Complaint fails to meet this burden.

Plaintiff's claims relating to illegal advertisements should be dismissed because the Complaint does not adequately allege any actionable misrepresentation or omission.  The presence of illegal advertisements on Qutoutiao's applications does not render any of its

1

disclosures false or misleading, because the Company never promised that it would be able to eliminate every illegal advertisement from its billions of daily advertisements, and it never guaranteed or even touted the adequacy of its compliance program. To the contrary, it disclosed repeatedly and in detail the challenges it faced in complying with an uncertain, evolving, and subjective regulatory regime. Plaintiff's contention that, unbeknownst to investors, Qutoutiao intentionally placed illegal advertisements is pure speculation unsupported by well-pleaded facts.

Plaintiff also contends that Qutoutiao failed to characterize a 2018 acquisition as a related party transaction and failed to disclose other supposed related party transactions. But the Complaint does not include any well-pleaded facts showing that the acquired company was a related party, and the other transactions were in fact disclosed.

The Complaint further alleges that Qutoutiao reported different revenue numbers to the Securities and Exchange Commission ("SEC") and China's State Administration for Market Regulation ("SAMR"). The supposed discrepancies are attributable to differences in U.S. and Chinese accounting standards, and Plaintiff does not plead facts showing otherwise.

Plaintiff's claims should also be dismissed for the separate and independent reason that he fails to allege particularized facts giving rise to a strong inference of scienter, which is required in this case for all claims. Plaintiff pleads no stock sales or other facts showing motive and opportunity to commit fraud. He likewise fails to plead any facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. Rather, Plaintiff relies entirely on allegations that courts in this district have repeatedly held are insufficient to show scienter as a matter of law, such as certain Defendants' corporate titles. Rather than raise a strong inference of scienter, the facts alleged in the Complaint show the manifestation of a well-disclosed risk, resulting from Qutoutiao's admitted limitations in its compliance efforts, which exacerbated the Company's strategic revenue growth deceleration.

## BACKGROUND

**Qutoutiao and Its Stock Offerings:**  Qutoutiao is a leading operator of mobile content platforms in the People's Republic of China ("PRC").  Declaration of Bo Bryan Jin ("Jin Decl.") ¶ 2, Ex. 1 at 51–54. [1]  Launched in June 2016, its "eponymous flagship mobile application, *Qutoutiao*,[2] meaning 'fun headlines' in Chinese, applies artificial intelligence-based algorithms to deliver customized feeds of articles and short videos to users based on their unique profiles, interests and behaviors."  *Id.* at 51–52; *see also* Compl. ¶ 58.  On average, more than 120 million users spend time on *Qutoutiao* and the Company's other mobile applications in a given month (referred to as monthly-active users or "MAUs"), and more than 30 million users do so on a given day (referred to as daily-active users or "DAUs").  Jin Decl. ¶ 3, Ex. 2 at 1.

Since its inception, Qutoutiao has "strategically targeted users from lower-tier cities in China,"[3] an "underserved market" with "significant underpenetration of mobile phones," "significant need for mobile entertainment," and "high monetization potentials."  Ex. 1 at 52–53; *see also* Compl. ¶ 59.  The Company believes that "mobile users in lower-tier cities tend to have a slower pace of life," "spend more time on the Internet given limited offline entertainment venues," and "enjoy rapidly growing disposable income and bear much lower financial burden due to lower housing prices and living expenses."  Ex. 1 at 53.  *Qutoutiao*'s content is designed

---

[1] All facts set forth herein are drawn from the Complaint, materials incorporated by reference therein, or publicly available documents properly subject to judicial notice.  As this Court has explained, matters properly considered at the pleading stage include the facts alleged in the complaint, "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."  *Furlong Fund LLC v. VBI Vaccines, Inc.*, 14-Cv-9435, 2016 WL 1181710, at *2 (S.D.N.Y. Mar. 25, 2016) (Stein, J.).  Courts are also permitted to take judicial notice of media reports for the fact of their publication.  *See, e.g.*, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("We have previously held that it is proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information.");  *Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009) (considering media articles).

[2] Consistent with Qutoutiao's public filings, its eponymous application is referred to herein in italicized font to distinguish it from the corporate entity.

[3] "Lower-tier cities" refers to cities in China other than the 36 "tier-1" and "tier-2" cities.  Ex. 1 at 2.  As of December 2017, the lower-tier cities had more than 1 billion residents in total.  Jin Decl., ¶ 4, Ex. 3 at 125.

to resonate with these users, who "tend to have different interests and preference in comparison to users from tier-1 and tier-2 cities," and the application attracted a large group of loyal users from the lower-tier cities.  *Id.* at 52–53.

Qutoutiao completed its initial public offering (the "IPO") in September 2018, with its American depositary shares ("ADSs") traded on NASDAQ.  Compl. ¶¶ 62, 304.  In April 2019, Qutoutiao closed a secondary public offering (the "SPO") of its ADSs.  *Id.* ¶ 64.  None of Qutoutiao's directors or executive officers sold stock in either offering.  Ex. 3 at 164-165; Jin Decl. ¶ 5, Ex. 4 at 152.

**Qutoutiao's Advertisement Business:**  Qutoutiao generates revenue "primarily by providing advertising and marketing services."  Ex. 1 at 53.  The Company places more than 2 billion advertisements every day on its applications.  Jin Decl. ¶ 6, Ex. 5  at 6.  Qutoutiao focuses on performance-based advertisements and charges mainly on an optimized cost-per-click basis. Ex. 1 at 79, 81.  In other words, Qutoutiao generates more revenue when more users click on the advertisements.  User engagement, often measured by MAUs and DAUs, therefore, impacts Qutoutiao's revenues.  *See id.* at 78.

When Qutoutiao first started its advertisement business, it primarily relied on third-party advertising platforms to sell its advertising spaces.  *See* Ex. 3 at 21.  In particular, Baidu, another Chinese internet company, helped Qutoutiao sell a large volume of advertisements in 2016 and 2017.  *See* Ex. 3 at 23.  As the business grew, Qutoutiao became increasingly interested in operating its own advertising platform, which would enhance its "monetization efficiency" and allow the "business to become independent and obtain long-term viability."  Ex. 1 at 57–58.  In February 2018, Qutoutiao acquired Shanghai Dianguan Internet Technology Co., Ltd. ("Dianguan"), an advertising agent it was already working with, for RMB 15 million (approximately USD 2.3 million).  Ex. 3 at 5, 77, 78, 115, F-58, F-69, F-70.  Qutoutiao

combined Dianguan's existing technology and its own resources into an in-house advertising platform and considerably reduced its reliance on third-party platforms, although it continues to work with such platforms including Baidu to this day.  Ex. 1 at 58, 81.

**PRC Advertisement Regulations:**  As disclosed in the offering documents and throughout the putative class period, Qutoutiao's advertisement business is heavily regulated. Ex. 3 at 25-26.  Under the PRC Advertisement Law and SAMR's Interim Measures for the Administration of Internet Advertising, the Company is "obligated to monitor the advertising content shown on [its] mobile applications to ensure that such content is true, accurate and in full compliance with applicable laws and regulations."  *Id.* at 25.  "Violation of these laws and regulations may subject [Qutoutiao] to penalties, including fines, confiscation of [its] advertising income, orders to cease dissemination of the advertisements and orders to eliminate the effect of illegal advertisements."  *Id.* at 25.  Regulators "may even force [Qutoutiao] to terminate [its] advertising operation."  *Id*.  In addition, illegal advertisement can harm Qutoutiao's "brand and reputation," or lead to temporary suspension of its applications from app stores.  *Id.* at 21, 25.

Ensuring that the billions of advertisements placed on Qutoutiao's applications each day are "true, accurate and in full compliance" is, to put it mildly, a tall task.  In particular, "for the determination of the truth and accuracy of the advertisements, there are no implementing rules or official interpretations, and such a determination is at the sole discretion of [SAMR's] relevant local branch . . . , which results in uncertainty in the application of these laws and regulations." *Id* at 25.  Indeed, the PRC government has the ability to impose fines or cease-and-desist orders under these regulations for any advertisements it deems "obscene, defamatory, inappropriately satirical or otherwise inappropriate."  *Id*.  Also, unscrupulous "advertisers on [Qutoutiao's] mobile applications . . . may use measures that are designed to evade [the Company's] monitoring, such as providing inauthentic material that does not match the actual advertisement,

or supplying advertising which is superficially compliant but nevertheless is linked to one or more webpages that feature noncompliant advertising content." *Id.* Moreover, Qutoutiao's "employees responsible for reviewing advertisements may not fully understand the relevant laws and regulations or may be inappropriately influenced by the advertisers." *Id.*

It is thus hardly a surprise that illegal advertisements have reportedly appeared on *Qutoutiao*. Indeed, the Complaint alleges several well-publicized incidents that took place after the regulatory and public scrutiny of the industry intensified in late 2018, including:

- A September 2018 media report regarding advertisements concerning certain categories of health-related products, Compl. ¶ 265;
- A November 2018 China Central Television ("CCTV") report regarding "numerous advertisements containing vulgar content," advertisements regarding "certain special products and services," and advertisement labeling issues, *id.* ¶ 266;
- A lawsuit filed against Qutoutiao in January 2019 concerning gambling advertisements, *id.* ¶ 267; and
- A June 2019 meeting between Qutoutiao and SAMR's Shanghai branch regarding advertisements concerning weight-loss products, *id.* ¶¶ 71, 269; *see also id* ¶ 265 (incidents involved other companies in the industry).

Qutoutiao candidly acknowledged the challenges beginning with its September 2018 IPO offering documents, warning investors in no uncertain terms that, despite the significant regulatory, reputational, and other risks, it "cannot assure [investors] that all the advertisements shown on [its] mobile applications are true, accurate, appropriate and in full compliance with applicable laws and regulations." Ex. 3 at 25.

**Qutoutiao's Strategy Shift in 2020:** Like many young, high-growth companies, Qutoutiao has not been profitable. Compl. ¶ 94. In 2020, Qutoutiao made the strategic decision to "balance . . . growth and profitability," with the "main financial objective" of breaking even on non-GAAP basis[4] by year-end. Jin Decl. ¶ 7, Ex. 6 at 5-6; *see also id.* ¶ 8, Ex. 7 at 3 (noting

---

[4] Non–GAAP profit does not include share-based compensation expenses, which could distort underlying business trends. Ex. 2 at 6.

that "growth is not an end in itself"); *id.* ¶ 9, Ex. 8 at 3 ("Our focus for the year continues to be on the underlying profitability of the business.").  Qutoutiao "operate[d] on a smaller sales and marketing budget," *id.* ¶ 10, Ex. 9 at 3, "which de-emphasized short-term user and revenue growth."  Ex. 6 at 5; *see also* Ex. 8 at 3 (noting budget cut's "downward pressure on [] DAU and MAU" and by extension revenues).  The Company successfully executed this strategy.  As shown in the chart below, throughout 2020 Qutoutiao's revenue growth trended down while its profit trended up.[5]  In Q4 2020, the Company finally achieved its goal of breakeven.  Ex. 2 at 1.



**The CCTV Incident:**  On July 16, 2020, CCTV reported in its Annual Consumer Rights Show that certain advertisements placed by third-party advertising agents on *Qutoutiao* exaggerated the health benefits of certain food and diet products, and promoted activities that may involve online gambling (the "CCTV Report").  Ex. 11 at 4; *see also* Compl. ¶ 88.  There is no allegation that Qutoutiao was alerted ahead of time to the advertisements at issue.

In the wake of the CCTV Report, *Qutoutiao* was allegedly temporarily (i) removed from several major Android-based app stores in China and (ii) unavailable for download at the Apple App store.  *Id.*  The removal negatively impacted the application's MAUs and DAUs, as well as user time spent.  Ex. 12 at 1.  Because most of Qutoutiao's advertisements are performance-based, the reduction in user activities further adversely affected its revenue.  *Id.*; *see also* Ex. 8 at 7 (noting removal's "negative impacts on [Qutoutiao's] business operationally and financially").

---

[5] Jin Decl. ¶¶ 11–13, Ex. 10 at 1-2; Ex. 11 at 1; Ex. 12 at 1; Ex. 2 at 1.

The CCTV Report implicated only a small number of advertisements.  Compl. ¶ 88.  The Company, however, was "quite cautious" and "took extraordinary measures" to avoid any risk of further negative publicity and reputational harm.  Ex. 9 at 6.  In view of the vague, subjective nature of the regulations; *see* Ex. 3 at 25, Qutoutiao "went above and beyond . . . the laws and regulations, as well as industry practice" in identifying advertisements that may be viewed as "misleading or inappropriate," even if they are not necessarily illegal.  Ex. 9 at 3, 6.

The combination of these factors— *Qutoutiao*'s temporary removal from the app stores, the Company's remedial measures, and its strategic focus on profitability over growth—led to a year-over-year revenue decline in the third quarter.  Ex. 12 at 1; Ex. 9 at 6.  Nevertheless, third-quarter revenues were still within the Company's guidance range, Ex. 12 at 1, and its profit margin was at a post-IPO historic high, Ex. 8 at 5.

**Plaintiff's Claims:**  Plaintiff alleges that Qutoutiao's success was a result of illegal advertisements intentionally placed on its applications.  *See*, *e.g.*, Compl. ¶ 79.  Plaintiff also alleges that Qutoutiao failed to disclose related party transactions and reported inflated revenues. *See*, *e.g.*, *id.* ¶¶ 111–16.  Based on these allegations, the Complaint asserts:

- Violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder against Qutoutiao, the Insider Defendants,[6] and the Underwriter Defendants,[7] Compl. ¶¶ 351–65;

- Section 20(a) of the Exchange Act against the Insider Defendants, *id.* ¶¶ 366–71;

- Section 11 of the Securities Act of 1933 (the "Securities Act") against Qutoutiao, the Director Defendants,[8] and the Underwriter Defendants, *id.* ¶¶ 372–81;

---

[6] The Insider Defendants are Eric Tan, Qutoutiao's co-founder, chairman, and CEO ("Tan"); Lei Li, its co-founder and vice chairman and former director and CEO; Xiaolu Zhu, its CFO; and Jingbo Wang, its former director and CFO.  Compl. ¶¶ 24–28.  These individuals have not been served with a summons and complaint.

[7] The Underwriter Defendants include Citigroup Global Markets Inc., Deutsche Bank Securities Inc., China Merchants Securities (HK) Co., Ltd., UBS Securities LLC, Keybanc Capital Markets, Inc., CLSA Limited, Haitong International Securities Company Limited, Jefferies Group LLC, Lighthouse Capital International Inc.  Compl. ¶¶ 37-45.

[8] The Director Defendants are Qutoutiao's current directors Chen, Jianfei Dong, James Jun Peng, and Feng Li, as well as its former directors Shaoqing Jiang and Yongbo Dai.  Compl. ¶¶ 30-35.  Other than Chen, these individuals have not been served with a summons and complaint.

- Section 12(a)(2) of the Securities Act against Qutoutiao and the Underwriter Defendants, *id.* ¶¶ 382–93; and

- Section 15 of the Securities Act against the Director Defendants, *id.* ¶¶ 394–400.

## ARGUMENT

"To survive a Rule 12(b)(6) motion to dismiss, the complaint must 'state a claim to relief that is plausible on its face.'" *Furlong Fund v. VBI Vaccines,* 2016 WL 1181710, at *2 (Stein, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This standard "asks for more than a sheer possibility that a defendant acted unlawfully." *Iqbal,* 556 U.S. at 678.  If Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

In deciding such a motion, "the court is not required to accept every allegation set forth in the plaintiffs' complaint," "[n]or are unsupported conclusions or unwarranted inferences based on factual allegations required to be accepted by the court." *In re Eastman Kodak Co.*, No. CIV.A.6:05-CV-6326, 2006 WL 3149361, at *4 (W.D.N.Y. Nov. 1, 2006).  If the allegations "conflict with the plain language of the publicly filed disclosure documents, the disclosure documents control, and the court need not accept the allegations as true." *Furlong Fund*, 2016 WL 1181710, at *2; *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 505 B.R. 135, 141 (S.D.N.Y. 2013) ("[A]llegations contradicted by documents incorporated into the pleadings by reference need not be accepted as true.").  "A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co., Inc.,* 87 F.3d 65, 70 (2d Cir. 1996).

## I.   PLAINTIFF FAILS TO PLEAD A SECTION 10(b) CLAIM

To state a Section 10(b) claim, Plaintiff must allege, *inter alia*, (1) a material misrepresentation or omission and (2) scienter. *Vladimir v. Bioenvision Inc.*, 606 F. Supp. 2d 473, 484 (S.D.N.Y. 2009) (Stein, J.).  Securities fraud claims must meet the pleading

requirements of Rule 9(b), under which Plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Communications, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 99 (2d Cir. 2007).

Moreover, "'[w]hen an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak.'" *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 434 (S.D.N.Y. 2018) (quoting *Chiarella v. U.S.*, 445 U.S. 222, 235 (1980)). Thus, a defendant has no "duty to disclose information simply because it is material," *Id.* (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011)), or "because a reasonable investor would very much like to know that fact." *Vladimir*, 606 F. Supp. 2d at 484.

Finally, a complaint alleging securities fraud must also meet the heightened pleading requirements of the PSLRA, under which Plaintiff must (i) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading" and (ii) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" for each act or omission. 15 U.S.C. § 78u-4. For an inference of scienter to be strong, it must be "cogent and at least as compelling as any opposing inference." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007).

### A.    THE COMPLAINT FAILS TO PLEAD A MATERIALLY FALSE OR MISLEADING STATEMENT OR OMISSION

#### 1.    Illegal Advertisement Claims

##### a.    Plaintiff Has Not Pleaded a Materially False or Misleading Statement Regarding Illegal Advertisements

Plaintiff claims that a variety of Qutoutiao's disclosures were materially false and misleading[9] because Defendants allegedly failed to disclose that Qutoutiao's revenue growth was

---

[9] The challenged disclosures pertain to, among other things, Qutoutiao's strategic focus on lower-tier cities, its advertisement business in general, the Dianguan acquisition, advertisement regulations, and financial and

fueled by placing illegal advertisements.  *See*, *e.g.*, Compl. ¶ 8.  This claim fails because Qutoutiao disclosed the very risks Plaintiff claims it concealed and had no obligation to accuse itself of wrongdoing.

At the time of the IPO and at all times thereafter, Qutoutiao indisputably disclosed the risks associated with Chinese advertisement regulations:

- "[W]e are obligated to monitor the advertising content shown on our mobile applications to ensure that such content is true, accurate and in full compliance with applicable laws and regulations."  Ex. 3 at 25.
- "Violation . . . may subject us to . . . fines, confiscation of our advertising income, [or] even . . . terminat[ion] [of] our advertising operation."  *Id.* at 25.
- "If an illegal advertisement featured on our mobile applications were to have excessive negative effects, our brand and reputation may be harmed."  *Id.* at 25.
- "In the past . . . mobile news applications were temporarily blocked and suspended for different lengths of time, ranging from a few days to a few weeks, following publication of content considered to be noncompliant."  *Id.* at 20-21.

Qutoutiao also warned investors of the various factors that make full compliance challenging, including, among other things, the "uncertainty in the application of these laws and regulations," advertisers' efforts to "evade . . . monitoring," and their "inappropriate[] influence[]" on Qutoutiao employees.  *Id.* at 25.  Significantly, Qutoutiao never promised that it would be able to eliminate false advertisements.  Quite the opposite, it candidly acknowledged that "[w]e cannot assure you that all the advertisements shown on our mobile applications are true, accurate, appropriate and in full compliance with applicable laws and regulations."  *Id.* at 25; *see also* 5–6  *supra*.  Having disclosed the difficulty of complying fully with uncertain advertising regulations and the associated risks, Qutoutiao had no further disclosure obligations: "[T]he federal securities laws do not require a company to accuse itself of wrongdoing," *In re*

---

operational results.  *See*, *e.g.*, Compl. ¶¶ 126, 128, 130–31, 133, 136, 138, 140, 142, 144–47, 149–51 , 153, 156, 158, 161, 163, 165–67, 170, 172, 175, 177, 179, 181, 183, 186, 188, 190, 192–93, 195, 197, 199–200, 202, 204–05, 207–08, 210–12, 214–15, 217–19, 222, 224, 226–27, 229, 231, 234, 236, 238, 240, 242–43, 245–46, 248–49, 250, 252–55, 257–59.

*Citigroup, Inc. Secs. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004); *see also DoubleLine Cap. LP*, 323 F.Supp.3d at 434 (same).

Judge Liman recently dismissed a case involving essentially the same allegations.  In *Jiajia Luo v. Sogou, Inc.,* 465 F. Supp. 3d 393 (S.D.N.Y. 2020), the complaint alleged that another Chinese company, Sogou, failed to disclose its deficiencies in complying with PRC advertisement regulations, which resulted in fines and a business suspension.  *Id*. at 400–02, 404–05.  The Court held that the plaintiffs failed to plead an actionable misrepresentation or omission, because Sogou "provided no assurance . . . that [its] procedures would be sufficient to guarantee compliance."  *Id.* at 408–10.  Here, Qutoutiao similarly told investors that it "cannot assure . . . compliance" with the advertisement regulations.  Ex. 3 at 25; *see also* 5–6 *supra*.  It thus "warned investors of exactly the risk the plaintiffs claim was not disclosed."  *Sogou*, 465 F. Supp. 3d at 411.  Just like Sogou, Qutoutiao neither touted "the adequacy of [its] compliance program" nor "descri[bed] [its] compliance measures in confident detail," *id.* at 410, and therefore "no reasonable investor could infer that [Qutoutiao's] compliance efforts were particularly effective," *id.* at 409–10.[10]  As in *Soguo*, therefore, Plaintiff here has failed to plead an actionable misrepresentation or omission regarding the presence of noncompliant advertisements.  *See also Asay v. Pinduoduo Inc.*, No. 18-CV-7625 (PKC), 2020 WL 1530745, at \*6–8 (S.D.N.Y. Mar. 30, 2020) (finding no actionable misrepresentation or omission because company warned investors that its compliance efforts "may not always be successful" and it may face "[p]otential liabilities under PRC law").

> **b.**     **The Intentional Illegal Advertisement Placement Claim Is Not Well-Pleaded**

---

[10] Indeed, investors were well aware that illegal advertisements were reportedly found on Qutoutiao's and its competitors' applications.  *See* Compl. ¶¶ 70-71, 265-269.

Plaintiff's contention that Qutoutiao secretly took "steps to increase the placement of non-conforming advertisements" is speculative and not supported by well-pleaded factual allegations. *See* Compl. ¶ 13. ***First,*** Plaintiff claims that, prior to Qutoutiao's acquisition of Dianguan, Baidu "provided oversight of the content and quality of the advertisements to ensure compliance," Compl. ¶ 12, and that replacing Baidu with Dianguan "allowed QTT to bypass third-party oversight of the content, quality, and legal compliance of the advertisements" and to "freely place[] on its platform more advertisements that did not comply with Chinese government regulations." [11] *Id.*; *see also* ¶¶ 76–78. The Complaint, however, includes no well-pleaded factual allegation showing that Baidu provided stricter oversight or, indeed, ***any*** oversight[12]; Plaintiff alleges only that Baidu functioned as a sales agent. *See, e.g.*, Compl. ¶ 74. The Complaint also includes no well-pleaded factual allegations supporting the assertion that Qutoutiao placed ***more*** illegal advertisements after the Dianguan acquisition. Instead, the allegations illustrate increasing media and regulatory scrutiny of advertisement content in late 2018 and beyond, well after Qutoutiao limited Baidu's role and sought to build its internal advertising competency for legitimate business reasons, which the Complaint fails to challenge with non-conclusory factual allegations. These allegations are thus unsupported.

***Second,*** Plaintiff's claim that Qutoutiao focuses on lower-tier cities for the purpose of evading regulation is similarly unsupported. *See* Compl. ¶ 73. Since its IPO, Qutoutiao has consistently explained the factors behind its strategy of focusing on lower-tier cities, including the "significant potential for further mobile penetration," "slower pace of life," "limited offline entertainment venues," "fast increasing disposable incomes and lower financial pressures."

---

[11] Qutoutiao made detailed disclosures regarding the business reasons for acquiring Dianguan, such as enhanced monetization efficiency and long-term business independency. *See* Ex. 1 at 57–58. The Complaint includes no well-pleaded factual allegation that contradicts these disclosures.

[12] Media have reported multiple incidents where Baidu placed suspected illegal advertisements on its own websites; in one of these incidents in September 2020, a Baidu co-founder was reportedly detained by police for the violation. *See* Jin Decl. ¶¶ 14–15, Exs. 13; 14.

Ex. 3 at 1; *see also* Ex. 1 at 53.  Plaintiff does not allege facts to the contrary.  Instead, Plaintiff

asserts, with no factual support, that Qutoutiao "intentionally target[ed] consumers in lower tier,

provincial Chinese cities because it knew that regulators were less likely to scrutinize

advertisements for compliance that were targeted to those end users."  Compl. ¶ 73.  This

allegation is not well-pleaded,[13] and is inactionable in any event.  The securities laws do not

require an issuer to engage in "self-flagellation" by characterizing its publicly disclosed

activities—here, its well-disclosed strategy of targeting lower-tier cities—as unlawful or

improper.  *In re Pfizer Inc. Shareholder Deriv. Litig.*, 722 F. Supp. 2d 453, 465 (S.D.N.Y. 2010).

  **Third,** Plaintiff cannot rely on Qutoutiao's Q3 2020 revenue decline as showing that the

company intentionally placed illegal advertisements.  *See* Compl. ¶¶ 86–93.  Qutoutiao's focus

on profitability already caused a significant growth slowdown at the time of the CCTV Report;

its Q2 revenues were essentially flat on a year-over-year basis.  *See* Ex. 11 at 1.  The Company

promptly acknowledged that this downward trend was exacerbated by remedial measures taken

in response to the CCTV Report and the temporary removal of *Qutoutiao* from the app stores.

*See* Compl. ¶ 91.  Plaintiff fails to explain how a revenue decline following publicity around

specific illegal advertisements does anything to indicate that Qutoutiao "had been complicit in

allowing illegal advertisements to be placed on its website."  *Id.*  It does not, but is instead a

materialization of "the exact risk" Qutoutiao warned of.  *Sogou*, 465 F. Supp. 3d at 411.[14]

  **Last,** the alleged statements of Plaintiff's confidential witnesses ("CWs")—such as that

"the Company's advertisement screening procedure was not very strict," Compl. ¶ 80, that the

Company uses contractors to screen advertisements, *id.* ¶ 81, and that manual review of

---

[13] Plaintiff's claim that one advertising agent targeted certain geographic areas for illegal advertisements does not support Plaintiff's claim that *Qutoutiao* intentionally placed illegal advertisements.  *See* Compl. ¶ 84.

[14] The revenue decline also does not support Plaintiff's speculation that "a substantial amount of QTT's revenue was generated from illegal advertisements," Compl. ¶ 93, because, among other reasons, the Company's remedial measures went far beyond illegal advertisements, *see supra* 7–8.

advertisements could override the algorithm-based initial screening—do not render any of the challenged disclosures materially false or misleading.  *See Sogou*, 465 F. Supp. 3d at 408–11. Moreover, the Complaint does not allege that any of the CWs was on Qutoutiao's advertisement review team, *see* Compl. ¶¶ 80, 81, 85; and as a result none is described "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged."  *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000); *see also In re Inv. Tech. Grp., Inc. Sec. Litig.*, No. 15 CIV. 6369 (JFK), 2018 WL 1449206, at \*5 (S.D.N.Y. Mar. 23, 2018) ("[C]ourts in this District have discounted allegations based on information supplied by a confidential witness that was not obtained first-hand."). [15]

Because the Complaint does not include any well-pleaded fact that supports Plaintiff's allegations that Qutoutiao intentionally placed illegal advertisements, Plaintiff's challenges to Defendants' accurate disclosures fail.[16]

### 2.      Related Party Transaction Claims

Plaintiff's claims that Qutoutiao should have characterized the Dianguan acquisition as a related party transaction fails because he fails to plead facts showing that Dianguan was a related party.  *See* Compl. ¶¶ 107-111.  The Complaint does not allege common ownership, management, or control between the two companies prior to the acquisition.  *Id.*  Instead, Plaintiff's claim of relatedness is solely based on an alleged "close business relationship" between Tan and Dianguan's founder.  *See id.*  Plaintiff fails to explain how that alleged

---

[15] Separately, allegations made by the "Former Content Editor" are not probative because he left the Company before the IPO and the putative class period.  *See* Compl. ¶ 80; *N. Collier Fire Control and Rescue Dist. Firefighter Pension Plan et al. v. MDC Partners, Inc*., No. 15 Civ. 6034, 2016 WL 5794774, at \*10 (S.D.N.Y. Sept. 30, 2016); *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 799 (S.D.N.Y. 2020).  Similarly, the "Former Sales Director" allegedly left Qutoutiao in May 2020, Compl. ¶ 81, and thus cannot  provide "nonpublic information that postdates [their] tenure." *MDC Partners*, 2016 WL 5794774, at \*10.

[16] Plaintiff also claims that Qutoutiao failed to account for loss contingency for possible fines in connection with illegal advertisements placed on its applications.  Compl. ¶¶ 121–22.  This claim fails because the Complaint does not allege any actual government investigation that was likely to result in a material fine, and the mere "potential for investigation does not give rise to a 'probability' of impairment, the standard the GAAP uses when determining whether disclosure is necessary."  *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 577 (6th Cir. 2008).

relationship would prevent Dianguan from "fully pursuing its own separate interest," or otherwise render Dianguan and Qutoutiao related parties.  *Id.* ¶ 111; *see Tabor v. Bodisen Biotech, Inc.*, 579 F. Supp. 2d 438, 445, 450–51 (S.D.N.Y. 2008) (rejecting related party allegation based on business relationship).[17]

Plaintiff also claims that Qutoutiao failed to disclose related party transactions with Tujin, Fangce, and Xihu[18]—all allegedly controlled by Tan.  Compl. ¶¶ 112–115.  These claims rely entirely on allegations that short-seller Wolfpack Research made in a December 2019 report (the "Wolfpack Report").  *Id.* n. 41, 45-46.  The Wolfpack Report, in turn, is supposedly based on a "50,000-ad sample . . . taken during a period of approximately four hours ***on September 12, 2019***."  Jin Decl. ¶ 17, Ex. 16 at 22 n. 34 (emphasis added).  Plaintiff thus fails to plead any transactions with these entities prior to (or after) September 12, 2019 or, for that matter, any misrepresentation or omission in Qutoutiao's IPO registration statement, SPO registration statement, or 2018 20-F.  *See* Compl. ¶¶ 141, 173, 184, 336, 350.  Plaintiff's claim with regard to Qutoutiao's 2019 20-F also fails, *see id.* ¶ 232, because Qutoutiao in fact disclosed in its 2019 20-F that it "provided advertising and marketing services to several companies controlled by" Defendant Tan and specifically named Tujin as an example.  Ex. 1 at 115; *see also* Ex. 15 (permitting "aggregation of similar transactions" in related party transaction disclosure).

### 3.    Revenue Reporting Claims

Plaintiff further claims that Qutoutiao's 2018 and 2019 20-F filings included inflated revenues, because Qutoutiao's wholly owned subsidiaries and other consolidated entities

---

[17] This claim also fails for the separate reason that Qutoutiao is only required to disclose ***material*** related party transactions.  *See* Jin Decl. ¶ 16, Ex. 15.  Plaintiff makes no effort to allege that the Dianguan acquisition was a material transaction.  At RMB15 million, or approximately 0.5% of Qutoutiao's 2018 revenue, it was not as a matter of law.  *See In re Francesca's Holdings Corp. Sec. Litig.*, No. 13-CV-6882 (RJS), 2015 WL 1600464, at *16 (S.D.N.Y. Mar. 31, 2015).

[18] Plaintiff alleges that Qutoutiao received advertising income from (1) Shanghai Tujin Network Technology Co. Ltd. ("Tujin"), (2) Shanghai Fangce Network Technology Co. Ltd. ("Fangce"), and (3) Shanghai Xihu Culture Communications Co. Ltd. ("Xihu").

supposedly reported lower revenues to SAMR.  Compl. ¶¶ 116–120.  Plaintiff admits, however,

that "SAMR filings . . . employ different accounting principles than U.S. GAAP, so it is not

uncommon to have differences between a company's SAMR and SEC filings."  *Id.* ¶ 117.

Courts have rejected similar claims for this exact reason.  *See, e.g.*, *In re China Valves Tech. Sec.*

*Litig.*, 979 F. Supp. 2d 395, 411 (S.D.N.Y. 2013) (holding plaintiffs failed to sufficiently allege

that defendants' "filing discrepancies were not due to differences in Chinese and U.S. accounting

standards."); *In re China Valves Tech. Sec. Litig.*, No. 11 CIV. 0796 LAK, 2012 WL 4039852, at

*6 (S.D.N.Y. Sept. 12, 2012) ("[T]he plaintiff must allege at least some fact to support that (1)

the SEC figures, and not the [PRC] filings, are false, and (2) any variation is not attributable to

variations in reporting rules or accounting standards.").

Moreover, Plaintiff admits that the "SAMR filings . . . do not include [Qutoutiao's]

revenue that is generated overseas," Compl. ¶ 117, which he fails to take into account.  *See* Ex. 3

at 77 ("Kubik Technology Pte. Ltd, our subsidiary in Singapore . . . targeted towards the

Southeast Asia market."); *see also Arfa v. Mecox Lane Ltd.*, No. 10 CIV. 9053, 2012 WL

697155, at *12 (S.D.N.Y. Mar. 5, 2012) (dismissing similar claim because SEC filings included

profits from non-PRC entities while PRC filings did not).[19]

## B.   PLAINTIFF FAILS TO PLEAD FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER

Plaintiff's claims (including its Securities Act claims, *see infra* 22–23) should be

dismissed for the separate and independent reason that he fails adequately to plead scienter.  "A

complaint may establish a strong inference of scienter . . . by 'alleging facts (1) showing that the

defendants had both motive and opportunity to commit the fraud or (2) constituting strong

circumstantial evidence of conscious misbehavior or recklessness.'"  *In re Citigroup Inc. Sec.*

---

[19] Plaintiff also contends that Qutoutiao's statement that claims in the Wolfpack Report "were based on factual errors and misunderstanding of business and accounting rules" are materially false or misleading.  Compl. ¶ 240-41. This claim fails, for the reasons discussed above.

*Litig.*, 753 F.Supp.2d 206, 232–33 (S.D.N.Y. 2010) (Stein, J.).  In evaluating scienter allegations, "a court must consider plausible, nonculpable explanations for the defendant's conduct."  *Id*. Moreover, where, as here, a plaintiff's case revolves around omissions (rather than affirmative misrepresentations), courts are less likely to infer scienter from circumstantial evidence.  *See generally Tellabs, Inc.*, 551 U.S. 308 (2007).

### 1.    Plaintiff's "Group Pleading" of Scienter Is Impermissible

As an initial matter, "[b]oth Rule 9(b) and the PSLRA require that '[i]n a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible.'"  *City of Omaha Police and Fire Ret. Sys. v. Evoqua Water Technologies Corp.*, 450 F. Supp. 3d 379, 419 (S.D.N.Y. 2020) (quoting *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009)); *see also The Penn. Ave. Funds v. Inyx Inc.*, No. 08-cv-6857 (PKC), 2010 WL 743562, at \*12 (S.D.N.Y. Mar. 1, 2010) ("[G]roup pleading of scienter ... runs afoul of the PSLRA's requirement that a plaintiff 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'").  Here, Plaintiff fails to plead facts supporting his scienter allegations on the part of any specific Defendant.  *See*, *e.g.*, Compl. ¶ 264 ("Qutoutiao and the Insider Defendants had actual knowledge or were reckless . . . .");  *id.* ¶ 270 ("[T]he Insider Defendants had actual knowledge or were reckless . . . .").  The scienter allegations fail for this reason alone.

### 2.    Plaintiff Fails to Allege Motive and Opportunity

Pleading motive and opportunity requires factual allegations showing that defendants "benefitted in some concrete and personal way from the purported fraud."  *Novak*, 216 F.3d at 307–08.  "Motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of this inquiry."  *ECA & Local 134 IBEW*

18

*Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).

Motive to commit fraud can be shown when "insiders allegedly make a misrepresentation in

order to sell their own shares at a profit." *Id.*

      Here, the Complaint does not allege that any Insider Defendant sold stock in either the

IPO or SPO or during the putative class period. *See Rombach v. Chang*, 355 F.3d 164, 177 (2d

Cir. 2004) (finding "no personal interest sufficient to establish motive" where "[p]laintiffs [did]

not allege that defendants sold stock or profited in any way during the relevant period").

"[B]ecause Plaintiffs fail to allege that Defendants received a 'concrete and personal' benefit

from the alleged scheme, and certainly do not allege that *each* Defendant received such a benefit,

they fail to demonstrate a motive to commit fraud." *Cortina v. Anavex Life Sciences Corp.*, No.

15-CV-10162 (JMF), 2016 WL 7480415, at *6 (S.D.N.Y. Dec. 29, 2016) (finding no scienter

because "Plaintiffs make no allegation that any Defendant sold shares during the Class Period").

### 3.    Plaintiff Fails to Allege Facts that Constitute Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness

      Plaintiff's remaining scienter allegations boil down to: (1) The Insider Defendants held

senior management roles at the Company, Compl. ¶¶ 261–62; (2) the Company had an

"aggressive" culture according one CW, Compl. ¶¶ 263–64; and (3) there were public reports of

suspected illegal advertisements on *Qutoutiao* and peer applications run by competitors. Compl.

¶¶ 265–69. None of these comes even close to showing conscious misbehavior or recklessness.[20]

      ***First,*** the Insider Defendants' status as "part of Qutoutiao's 'visionary and experienced

management team'" *id*. ¶ 263, does not plead conscious misbehavior or recklessness. "It is well

established that boilerplate allegations that defendants knew or should have known of fraudulent

---

[20] "Conscious misbehavior is an intentional wrongful act," *In re GeoPharma, Inc. Sec. Litig.*, 339 F.Supp.2d 432, 451 (S.D.N.Y. 2005), while recklessness requires a showing of "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *In re Citigroup*, 753 F. Supp. 2d at 233.

conduct based solely on their board membership or executive positions are insufficient to plead scienter." *In re Sotheby's Holdings, Inc.*, No. 00 CIV. 1041 (DLC), 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000); *accord, e.g.*, *In re Citigroup, Inc.,* 330 F. Supp. 2d at 381-382 (holding that scienter allegations based on seniority insufficient).

   ***Second,*** Plaintiff's conclusory CW allegations fall far short of raising a strong inference of scienter, because the CWs lacked direct contact with senior management and do not claim personal knowledge that management was aware of the conduct at issue. *See Campo v. Sears Holdings Corp.*, 371 F. App'x 212, 217 (2d Cir. 2010) (rejecting reports of CWs who "had no personal knowledge" of defendants' alleged awareness of fraud); *Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 460 (S.D.N.Y. 2010), *aff'd sub nom. Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*, 430 F. App'x 63 (2d Cir. 2011) (rejecting CW statements by "low-level employees [who] had no contact with the Individual Defendants"). In any event, the Company's allegedly "aggressive" and profit seeking culture does not in any way show conscious misbehavior or recklessness. *See Inchen Huang v. Higgins*, 443 F. Supp. 3d 1031, 1056 (N.D. Cal. 2020) (scienter allegation that individual defendant "fostered a culture of doing-anything" insufficient); *Fidel v. Rampell*, No. 02-61258-CIV, 2005 WL 5587454, at *7 (S.D. Fla. Mar. 29, 2005) (CW allegations describing corporate culture as "hip pocket chaos" and in "constant turmoil" insufficient).

   ***Last,*** Plaintiff's allegations regarding public reports of suspected illegal advertisements do not suggest either that Qutoutiao ***intentionally*** placed illegal advertisements or that the Insider Defendants had knowledge of any such practice. Indeed, if anything, these reports demonstrate the opposite of conscious misbehavior or recklessness: that despite a court ruling that Qutoutiao was not civilly liable for illegal advertisements on its applications, Compl. ¶ 267, the Company collaborated with regulators to address the issues, *id.* ¶ 269.

4.        **The Totality of the Allegations Do Not Support a Finding of Scienter**

Plaintiff's allegations, viewed in totality, are not "at least as likely as any plausible opposing inference." *Tellabs*, 551 U.S. at 328.  It is noteworthy that the Complaint includes none of the typical hallmarks of scienter pleading—CWs who directly interacted with senior management, internal reports, or detailed allegations suggesting Defendants engaged in conscious misconduct.  Plaintiff instead asks the Court to entertain the implausible notion that Qutoutiao's business was premised on placing illegal advertisements and that "[b]ecause the advertisements were illicit, they were an untenable revenue source supporting a doomed business model."  Compl. ¶ 8.  But Plaintiff does not allege any insider sales during the putative class period, in which the Company completed two stock offerings.  Why would Defendants build a business that is doomed to fail without reaping any personal benefits by selling stocks at inflated prices?  These allegations defy common sense.  *See Rombach*, 355 F.3d at 177 ("Plaintiffs do not allege that defendants sold stock or profited in any way during the relevant period.  To the contrary, defendants were among [the] largest shareholders and shared the pain when the company failed.").  The far stronger inference is that the Company's compliance efforts faced challenges and this well-disclosed risk materialized in the wake of the CCTV Report.  *See Slayton v. Am. Exp. Co.*, 604 F.3d 758, 762, 777 (2d Cir. 2010) (granting motion to dismiss where "inference of fraudulent intent is not 'at least as compelling as any opposing inference one could draw from the facts alleged.'").[21]

II.      **PLAINTIFF FAILS TO PLEAD SECTIONS 11 AND 12(a)(2) CLAIMS**

A.        **PLAINTIFF'S SECTIONS 11 AND 12(a)(2) CLAIMS ARE SUBJECT TO THE SAME HEIGHTENED PLEADING STANDARDS—AND FAIL FOR THE SAME REASONS—AS HIS SECTION 10(B) CLAIM**

---

[21] Because Plaintiff fails to plead scienter with respect to any Insider Defendant, Plaintiff cannot impute scienter to Qutoutiao.  *See Kinsey v. Cendant Corp.*, No. 04 Civ. 0582, 2004 WL 2591946, at *13 (S.D.N.Y. Nov. 16, 2004).

Similar to Section 10(b) claims, Section 11 or Section 12(a)(2) claims require well-pleaded facts that show an actionable misrepresentation or omission. *See In re CitiGroup*, 723 F. Supp. 2d at 583 (Stein, J.). The heightened pleading standard imposed by Rule 9(b) applies to Sections 11 and 12(a)(2) claims that "are premised on allegations of fraud." *Rombach*, 355 F.3d at 171. Here, Plaintiff's Sections 11 and 12(a)(2) claims are based on Qutoutiao's purported "***intentional*** placement of . . . illegal advertisements." Compl. ¶ 79 (emphasis added); *see also id.* ¶ 12 ("[T]his improper conduct was purposeful, not a mistake."). Indeed, Plaintiff specifically alleges "***fraud set forth in the Company's Offering Documents***." *Id.* ¶ 66 (emphasis added). Plaintiff has thus "alleged more than mere negligence," and all of his claims are subject to the heightened pleading standard. *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005) (Stein, J.), *aff'd* 553 F.3d 187 (2d Cir. 2009).

Plaintiff "cannot evade the Rule 9(b) strictures by summarily disclaiming any reliance on a theory of fraud." *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d at 635. Because fraud allegations form the basis for the Complaint and permeate Counts III and IV, Plaintiff's boilerplate "[t]his Count does not sound in fraud" disclaimer (Compl. ¶¶ 373, 383) is unavailing. *See In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 530 (S.D.N.Y. 2005) ("Plaintiffs' boilerplate disclaimers that their allegations are incorporated into their claims under sections 11 and 12(a)(2) 'except to the extent any such allegation may be deemed to sound in fraud' . . . is insufficient to remove those allegations from the requirements of Rule 9(b)"); *In re Elan Corp.*, No. 02CIV.865(RMB)(FM), 2004 WL 1305845, at *7 (S.D.N.Y. May 18, 2004) ("Notwithstanding the Plaintiffs' fraud disclaimer, the Section 11 claims in this case are peppered with" language "classically associated with fraud."). As a result, Plaintiff's failure to plead an actionable misrepresentation or omission under Section 10(b) also defeats his substantively identical Sections 11 and 12(a)(2) claims. *See* Section I.A. *supra*; *see also In re Ultrafem Inc. Securities*

*Litigation*, 91 F. Supp. 2d 678, 690–691 (S.D.N.Y. 2000) (dismissing both Securities Exchange Act and Securities Act claims where "plaintiffs make little, if any effort to differentiate their asserted negligence claims from the fraud claims.").

Also, where, as here, "the entire complaint sounds in fraud," Plaintiff must also properly "plead a strong inference of scienter" for its Securities Act claims. *JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d at 635; *accord Sogou*, 465 F. Supp. 3d at 408; *Caiafa v. Sea Containers Ltd.*, No. 06 CIV. 2565 (RMB), 2008 WL 11516813, at *5 (S.D.N.Y. May 15, 2008). As explained above, the Complaint falls far short of raising a strong inference of scienter, which provides a separate ground for dismissing the Sections 11 and 12(a)(2) claims. *See* Section I.B. *supra*.

### B.   PLAINTIFF'S SECTIONS 11 AND 12(a)(2) CLAIMS SUFFER FROM OTHER FATAL DEFECTS

*First,* Lead Plaintiff lacks standing to bring a Section 11 claim with regard to the SPO. A Section 11 claim may be brought only by "those who purchase[d] securities that are the direct subject of the prospectus and registration statement." *Barnes v. Osofsky*, 373 F.2d 269, 273 (2d Cir. 1967). To carry the burden, Plaintiff must prove that his shares are "directly traceable" to the offering in question. *See In re Puda Coal Sec. Inc.,* No. 11 Civ. 2598 (KBF), 2013 WL 5493007, at *6 (S.D.N.Y. Oct. 1, 2013). Plaintiff allegedly purchased all his shares on September 17, 2018, more than 6 months before the April 2019 SPO. Dkt. 9-1. By definition, he cannot trace his shares to the SPO and his Section 11 claims with respect to the SPO must be dismissed. *See Ho v. Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547, 560–561 (S.D.N.Y. 2012) (finding Section 11 standing for IPO claim but not for SPO claim because plaintiffs could not trace their shares to the SPO).

*Second,* the Section 12(a)(2) claim must be dismissed in its entirety for lack of standing. "[A] plaintiff seeking redress pursuant to Section 12(a)(2) must establish that it purchased the security directly from defendants through the public offering at issue." *In re Citigoup Inc. Bond*

*Litig.*, 723 F. Supp. 2d at 585; *see also In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 445 (S.D.N.Y. 2009) ("[L]iability pursuant to section 12(a)(2) only attaches to plaintiffs who purchased their shares directly in the initial public offering, and not the so-called 'aftermarket.'"). Plaintiff admittedly "did not buy [Qutoutiao ADSs] in the IPO or SPO directly from Defendants." Compl. n. 79. He thus lacks standing to assert the Section 12(a)(2) claim, for either himself or the putative class. *See Stadnick v. Vivint Solar, Inc.,* No. 14-CV-9283 (KBF), 2015 WL 8492757, at \*17 (S.D.N.Y. Dec. 10, 2015), *aff'd*, 861 F.3d 31 (2d Cir. 2017) (dismissing Section 12(a)(2) claim because "an individual may [not] represent absent class members with regard to claims as to which he or she has no individual standing."); *Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 520–21 (S.D.N.Y. 2018) (same) ("[T]here must be a named plaintiff sufficient to establish jurisdiction over each claim advanced.") (quoting *Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 (2d Cir. 2013)). [22]

**Third,** Plaintiff's Section 12(a)(2) claim against Qutoutiao fails for the additional reason that such a claim can only be asserted against a "statutory seller"—someone who either (a) "passed title, or other interest in the security, to the buyer for value" or (b) "successfully solicit[ed] the purchase, motivated at least in part by a desire to serve his own financial interest or those of the securities owner." *Pinter v. Dahl,* 486 U.S. 622, 642, 647 (1988). The Company is not a statutory seller under the first *Pinter* prong, because both the IPO and the SPO were firm commitment underwritings in which the Company sold only to the underwriters, Ex. 3 at 198–202, Ex. 4 at 186–190, and "a buyer cannot recover from a seller's seller." *In re Deutsche Telekom Ag Sec. Litig.*, No. 00 CIV 9475 SHS, 2002 WL 244597, at \*4 (S.D.N.Y. Feb. 20, 2002) (quoting *Pinter*, 486 U.S. at 644 n. 21); *see also Credit Suisse First Boston Corp. v. ARM*

---

[22] Plaintiff's reliance on *Langan v. Johnson & Johnson Consumer Companies, Inc.* is misplaced. That case involved neither a Section 12 claim nor a standing issue. 897 F.3d 88, 96 (2d Cir. 2018) ("Accordingly, we conclude that whether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing under Article III.").

*Financial Group, Inc.*, No. 99 CIV 12046 WHP, 2001 WL 300733, at *10 (S.D.N.Y. Mar. 28, 2001) ("Given that ARM conducted its offering through a firm-commitment underwriting, plaintiffs here did not purchase directly from ARM and thus lack standing under the first prong of *Pinter*.").  Plaintiff also fails to plead facts "amounting to active solicitation beyond signing the registration statements" under the second *Pinter* prong.  *Emerson v. Mutual Fund Series Trust*, 393 F. Supp. 3d 220, 259 (E.D.N.Y. 2019).  Plaintiff's barebones pleading lacks any non-conclusory allegation that the Company engaged in any "direct contact with any plaintiff" or otherwise engaged in any "specific conduct . . . to solicit" purchases of Qutoutiao's ADSs.  *In re Deutsche Telekom Ag Sec. Litig.*, 2002 WL 244597, at *5.  This claim thus must be dismissed.

## III.   <u>PLAINTIFF'S CONTROL PERSON CLAIMS FAIL AS A MATTER OF LAW</u>

A Section 15 claim requires, among other things, a viable pleading of a primary violation of Section 11 or 12(a)(2).  *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07 Civ. 0976 (LAP), 2008 WL 4449280, at *18 (S.D.N.Y. Sept. 30, 2008).  Plaintiff's failure to plead a primary claim under Section 11 or 12(a)(2) mandates the dismissal of his claim under Section 15.

Plaintiff's Section 20(a) claim fails as a matter of law because the Complaint does not adequately allege either an actionable primary violation of a Section 10(b) or any culpable participation by the Insider Defendants.  *Carpenters Pension Trust Fund v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014); *see also In re Deutsche Telekom*, 2002 WL 244597, at *7 (requiring "facts . . . pled with sufficient particularity that a strong inference is raised that the section 20(a) control person knew or should have known that the controlled person was engaging in fraudulent conduct.").

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request the Amended Complaint be dismissed in its entirety with prejudice.

Dated:      March 16, 2021                    SIMPSON THACHER & BARTLETT LLP

By:  */s/ George S. Wang*

George S. Wang
Shannon K. McGovern
Stephanie L. Hon
425 Lexington Ave
New York, NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
gwang@stblaw.com
smcgovern@stblaw.com
stephanie.hon@stblaw.com

Bo Bryan Jin (*pro hac vice*)
2475 Hanover Street
Palo Alto, CA 94304-1114
Telephone: (650) 251-5068
Facsimile: (650) 251-5002
bryan.jin@stblaw.com

*Attorneys for Defendants Qutoutiao, Inc. and Oliver Yucheng Chen*