**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re QUTOUTIAO, INC. SECURITIES LITIGATION | 1:20-cv-06707 (SHS) |
| | **ORAL ARGUMENT REQUESTED** |
| This Document Relates To: | |
| ALL ACTIONS. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE UNDERWRITER DEFENDANTS'**
**MOTION TO DISMISS**

O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

*Attorneys for Defendants Citigroup Global*
*Markets Inc., Deutsche Bank Securities Inc.,*
*China Merchants Securities (HK) Co., Ltd.,*
*UBS Securities LLC, KeyBanc Capital*
*Markets Inc., and Jefferies Group LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ..................................................................................................................... 3

I.    THE COMPLAINT FAILS AGAINST ALL DEFENDANTS FOR THE
      REASONS EXPLAINED IN THE QUTOUTIAO DEFENDANTS' BRIEF. ................ 3

II.   ALL CLAIMS AGAINST THE UNDERWRITER DEFENDANTS ALSO FAIL
      BECAUSE PLAINTIFF DOES NOT PLEAD THEIR SCIENTER. ............................... 3

      A.    Plaintiff's Generic and Conclusory Allegations Are Insufficient to Plead
            the Underwriter Defendants' Scienter. .................................................... 5

            1.    Motive and opportunity ............................................................... 5

            2.    Conscious misbehavior or recklessness ...................................... 6

      B.    Plaintiff's Blanket Scienter Allegations Are Also Insufficient Because
            They Do Not Distinguish Among the Underwriter Defendants. .......................... 8

III.  THE SECTION 10(B) CLAIM FAILS FOR THE INDEPENDENT REASON
      THAT THE COMPLAINT FAILS TO PLEAD FACTS SHOWING THAT THE
      UNDERWRITER DEFENDANTS MADE THE ALLEGED
      MISSTATEMENTS. ............................................................................................. 8

      A.    The Complaint Does Not Plead That the Underwriter Defendants Made
            the Other Qutoutiao Statements. ............................................................. 9

      B.    The Complaint Does Not Plead That the Underwriter Defendants Made
            the Alleged Misstatements in the Offering Documents. ..................................... 10

CONCLUSION ..................................................................................................................... 12

PAGE(S)

## Cases

*Am. High-income Trust v. Alliedsignal*,
  329 F. Supp. 2d 534 (S.D.N.Y. 2004) ...................................................................... 7

*Coronel v. Quanta Cap. Holdings Ltd.*,
  2009 WL 174656 (S.D.N.Y Jan. 26, 2009) ............................................................... 4

*Decker v. Massey–Ferguson, Ltd.*,
  681 F.2d 111 (2d Cir. 1982) ...................................................................................... 6

*Ganino v. Citizens Utils. Co.*,
  228 F.3d 154 (2d Cir. 2000) ............................................................................... 3, 5, 8

*Geiger v. The Solomon-Page Grp., Ltd.*,
  933 F. Supp. 1180 (S.D.N.Y.1996) ........................................................................... 5

*In re Adelphia Commc'ns Corp., Sec. Litig.*,
  2007 WL 2615928 (S.D.N.Y. Sept. 10, 2007) ...................................................... 4, 5, 7

*In re Indep. Energy*,
  154 F. Supp. 2d 741 (S.D.N.Y. 2001) ....................................................................... 6

*In re Merrill Lynch Auction Rate Sec. Litig.*,
  851 F. Supp. 2d 512 (S.D.N.Y. 2012) .................................................................... 5, 6

*In re Puda Coal Sec. Inc., Litig.*,
  30 F. Supp. 3d 261 (S.D.N.Y. 2014) ................................................................... 11, 12

*In re WRT Energy Sec. Litig.*,
  1999 WL 178749 (S.D.N.Y. Mar. 31, 1999) .......................................................... 6, 8

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011) .......................................................................................... 2, 9, 11

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001) ................................................................................... 3, 5

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
  2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008) .......................................................... 4

*Lorenzo v. SEC*,
  139 S. Ct. 1094 (2019) .............................................................................................. 10

*Miller v. Lazard, Ltd.*,
  473 F. Supp. 2d 571 (S.D.N.Y. 2007) .............................................................. 3, 5, 6, 8

<span style="letter-spacing:0.05em">T</span>ABLE OF <span style="letter-spacing:0.05em">A</span>UTHORITIES

PAGE(S)

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) ................................................................... 5

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) ................................................................... 6

*Scone Invs., L.P. v. Am. Third Mkt. Corp.*,
    1998 WL 205338 (S.D.N.Y. Apr.28, 1998) ........................................... 8

*Sharette v. Credit Suisse Int'l*,
    127 F. Supp. 3d 60 (S.D.N.Y. 2015) ............................................... 10, 11

*Shield v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) ................................................................. 11

*The Pa. Ave. Funds v. Inyx Inc.*,
    2010 WL 743562 (S.D.N.Y. Mar. 1, 2010) ............................................ 8

*United States v. Bestfoods*,
    524 U.S. 51 (1998) .................................................................................. 9

*Vogel v. Sands Bros. & Co., Ltd.*,
    126 F. Supp. 2d 730 (S.D.N.Y. 2001) .................................................... 7

**Regulations**

17 CFR § 240.10b–5 (2010) ........................................................................ 9

The Underwriter Defendants[1] respectfully submit this memorandum of law in support of their motion to dismiss the Complaint, and join in the arguments made in the Qutoutiao Defendants' Brief.[2]  The Underwriter Defendants write separately to describe their additional grounds for dismissal.

## PRELIMINARY STATEMENT

As shown in the Qutoutiao Defendants' Brief, the Complaint should be dismissed for numerous reasons that apply equally to the Underwriter Defendants:

- The Complaint fails to plead any actionable misstatement or omission, and Qutoutiao fully disclosed the risks inherent in operating under China's subjective and fast-changing advertising regulations.  *See* Qutoutiao Defendants' Brief § I.A.

- The Complaint's allegations that it was part of Qutoutiao's business model to place illegal advertisements on its platform are speculative and conclusory.  *See id.*

- Plaintiff's allegations that Qutoutiao failed to disclose related-party transactions and reported inflated revenue are inadequately pleaded and refuted by documents that the Complaint incorporates by reference.  *See id.*

- Plaintiff lacks standing to assert (i) a Section 11 Securities Act claim related to the SPO because he did not purchase shares traceable to that offering and (ii) a Section 12(a)(2) Securities Act claim as to either the IPO or SPO, because he does not sufficiently allege and cannot show that he purchased shares in either offering.  *See id.* § II.B.

---

[1] The Underwriter Defendants are (i) the underwriters in Qutoutiao's September 2018 initial public offering, Citigroup Global Markets Inc., Deutsche Bank Securities Inc., China Merchants Securities (HK) Co., Ltd., UBS Securities LLC, and KeyBanc Capital Markets Inc.; (ii) two underwriters in Qutoutiao's April 2019 secondary public offering, Citigroup Global Markets Inc., and Deutsche Bank Securities Inc.; and (iii) Jefferies Group LLC, the parent company of Jefferies LLC (which Plaintiff did not name as a defendant), an underwriter in the April 2019 SPO.  The other three secondary offering underwriters, CLSA Limited, Haitong International Securities Company Limited, and Lighthouse Capital International Inc., have not been served with the Complaint.  They have therefore not appeared in this case, and are not appearing on this motion.

[2] "The Qutoutiao Defendants' Brief" refers to the March 16, 2021 Memorandum of Law in Support of Defendants Qutoutiao and Yucheng Chen's Motion to Dismiss.  ECF No. 50.  Capitalized terms in this Memorandum have the same meaning as in the Qutoutiao Defendants' Brief.  In addition, this Memorandum refers to: (1) the prospectuses and registration statements filed in connection with Qutoutiao's September 2018 IPO and April 2019 SPO as the "Offering Documents"; (2) the Qutoutiao statements in quarterly earnings calls and SEC filings (other than the Offering Documents) referenced in the Complaint as the "Other Qutoutiao Statements."  Unless otherwise specified, all emphasis is added, and all citations and quotations are omitted.

As shown below, there are additional reasons to dismiss the Underwriter Defendants.

First, because all of Plaintiff's claims sound in fraud (including the Section 11 and 12(a)(2) claims in Counts III and IV), *see* Qutoutiao Defendants' Brief § I.B, II.A, Plaintiff must plead particularized facts for each Underwriter Defendant showing either (i) its motive and opportunity to commit fraud, or (ii) strong circumstantial evidence of its conscious misbehavior or recklessness. The Complaint comes nowhere close to satisfying that pleading obligation. Rather, it makes only blanket allegations that the Underwriter Defendants earned fees for their work on the IPO and SPO, that they hold themselves out as experienced in securities offerings by Chinese companies, and that a reasonable due diligence investigation should have revealed the alleged wrongdoing at Qutoutiao. Courts routinely find such generic allegations insufficient to plead an underwriter's scienter. The Complaint does not even distinguish among the Underwriter Defendants; rather, it lumps them together as a group, contrary to the Second Circuit's pleading standard. Without viable scienter allegations, all claims against the Underwriter Defendants must be dismissed.

Second, the claim against the Underwriter Defendants under Section 10(b) of the Exchange Act separately fails because the Complaint does not plead facts showing that the Underwriter Defendants made or had ultimate authority for the content of the alleged misstatements. *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). The Complaint pleads no facts showing that the Underwriter Defendants had any involvement in Qutoutiao's statements after the IPO and SPO, such as in Qutoutiao's quarterly or annual SEC filings or during quarterly earnings calls with analysts. Even as to the IPO and SPO in which the Underwriter Defendants were involved, the Complaint makes only conclusory allegations that they had ultimate authority over the Offering Documents. Those bare-bones allegations are insufficient under *Janus*.

## ARGUMENT

## I.   THE COMPLAINT FAILS AGAINST ALL DEFENDANTS FOR THE REASONS EXPLAINED IN THE QUTOUTIAO DEFENDANTS' BRIEF.

As demonstrated in the Qutoutiao Defendants' Brief, the Complaint fails to identify any material misstatements.  The Offering Documents fully disclosed the risks inherent in operating under China's subjective and amorphous advertising regulations, and the Complaint's allegations that it was Qutoutiao's purported business model to place illegal advertisements are speculative and conclusory.  *See* Qutoutiao Defendants' Brief § I.A.  Also inadequate are the Complaint's allegations that Qutoutiao engaged in undisclosed related-party transactions and reported incorrect revenue, because those allegations are not well pleaded, and are refuted by documents the Complaint incorporates by reference.  *See id.*  And Plaintiff lacks standing (i) to assert a Securities Act Section 11 claim based on the SPO, because he does not plead and cannot prove that he purchased shares traceable to that offering, and (ii) to assert a Securities Act Section 12(a)(2) claim, because he did not purchase shares in either offering.  *See id.* § II.B.

This showing requires that the Complaint be dismissed as to all defendants, including the Underwriter Defendants.

## II.   ALL CLAIMS AGAINST THE UNDERWRITER DEFENDANTS ALSO FAIL BECAUSE PLAINTIFF DOES NOT PLEAD THEIR SCIENTER.

Plaintiff must plead particularized facts showing the Underwriter Defendants' scienter as to all claims.  For the Section 10(b) claim, the PSLRA and Rule 9(b) require that the Complaint plead facts showing the Underwriter Defendants' "intent to deceive, manipulate or defraud." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 168 (2d Cir. 2000); *Miller v. Lazard, Ltd.*, 473 F. Supp. 2d 571, 580 (S.D.N.Y. 2007) (citing *Kalnit v. Eichler*, 264 F.3d 131, 138–39 (2d Cir. 2001).

That same scienter pleading requirement also applies to the claims brought under Section 11 or 12(a)(2) of the Securities Act.  Although ordinarily a plaintiff would not be required to plead scienter for Securities Act claims, Plaintiff here is required to do so because his Securities Act claims sound in fraud.  (*See* Qutoutiao's Mot. to Dismiss § II. A.)  Indeed, the main basis for the Complaint's allegation that Defendants violated Sections 11 and 12(a)(2) is that Qutoutiao's business model was to target geographic areas where regulators would not detect the illegal advertisements that Defendants knew would be placed on Qutoutiao's platform.  (*See* Compl. ¶¶ 8, 10, 86, 93.)  Those allegations sound in fraud not only as to the Qutoutiao Defendants, but also the Underwriter Defendants.  *See, e.g., In re Adelphia Commc'ns Corp., Sec. Litig*., 2007 WL 2615928, at *9 (S.D.N.Y. Sept. 10, 2007) (Section 11 claim against underwriter sounded in fraud because "[t]he Complaint as a whole is targeted at the fraud . . . not negligence, and the few paragraphs set aside under Count I do not alter the character of Plaintiffs' allegations"); *Ladmen Partners, Inc. v. Globalstar, Inc*., 2008 WL 4449280, at 12–13 (S.D.N.Y. Sept. 30, 2008) (Section 11 claim against underwriters sounded in fraud because "in a number of allegations of essentially fraudulent conduct, the [complaint] makes no effort whatsoever to distinguish the Underwriter Defendants from [other] Defendants").  As in *Ladmen*, Plaintiff sweeps the Underwriter Defendants under the rubric of "Defendants" in the Complaint's allegations of essentially fraudulent conduct.  (*See, e.g*., Compl. ¶ 10 ("Defendants duped investors into believing that QTT had come up with a genius business model that was driving remarkable revenue growth").).  Plaintiff therefore must plead in the Section 11 and 12(a)(2) claims that each Underwriter Defendant acted with scienter.  (*See* Qutoutiao's Mot. to Dismiss § II. A; *see also Coronel v. Quanta Cap. Holdings Ltd.*, 2009 WL 174656, at *15–16 (S.D.N.Y Jan. 26, 2009) (where Section 11 and 12(a)(2) claims sounded in fraud, plaintiff must "convey through factual allegations that the defendants made materially false statements, and that they did

so with scienter"); *Geiger v. The Solomon-Page Grp., Ltd.*, 933 F. Supp. 1180, 1189–90 (S.D.N.Y.1996) (dismissing Section 11 claim against underwriter that sounded in fraud for failure to plead scienter).

The Complaint fails this pleading burden because it (a) contains only boilerplate allegations regarding the Underwriter Defendants' roles in the IPO and SPO, and (b) fails to distinguish among individual Underwriter Defendants.

A.    **Plaintiff's Generic and Conclusory Allegations Are Insufficient to Plead the Underwriter Defendants' Scienter.**

To plead the Underwriter Defendants' scienter, Plaintiff must allege particularized facts giving rise to a strong inference that the Underwriter Defendants "had both motive and opportunity to commit fraud" or "strong circumstantial evidence of [the Underwriter Defendants'] conscious misbehavior or recklessness." *Lazard*, 473 F. Supp. 2d at 580 (citing *Kalnit*, 264 F.3d at 138–39.) Plaintiff has pleaded neither.

1.    *Motive and opportunity*

The only allegation that arguably attempts to plead motive and opportunity is that "the Underwriter Defendants earned lucrative underwriting fees for their participation." (Compl. ¶ 49). Courts routinely hold, however, that obtaining underwriting fees alone is insufficient to plead motive and opportunity. *Adelphia Commc'ns*, 2007 WL 2615928, at *3 (citing *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000)); *Geiger*, 933 F. Supp. at 1190–91. This allegation amounts to no more than a general business motive to make a profit, which does not plead scienter. *See, e.g.*, *In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d 512, 528 (S.D.N.Y. 2012) ("allegations of a general business motive to make a profit" failed to plead motive and opportunity); *Ganino*, 228 F.3d at 170 ("General allegations that the defendants acted in their economic self-interest are not enough.").

5

2.      *Conscious misbehavior or recklessness*

Absent well-pleaded motive-and-opportunity allegations, Plaintiff must meet the "heavy burden" of pleading facts showing strong circumstantial evidence of conscious misbehavior or recklessness.  *Merrill Lynch*, 851 F. Supp. 2d at 528–29.  This requires allegations of "highly unreasonable" conduct that "represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  *Lazard*, 473 F. Supp. 2d at 581.  "Where third-party advisers are concerned, to meet such a standard the allegations must approximate *an actual intent* to aid in the fraud being perpetrated by the company." *In re WRT Energy Sec. Litig.*, 1999 WL 178749, at *9 (S.D.N.Y. Mar. 31, 1999) (citing *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 121 (2d Cir. 1982)); *Merrill Lynch*, 851 F. Supp. 2d at 530; *In re Indep. Energy*, 154 F. Supp. 2d 741, 765 (S.D.N.Y. 2001).

The Complaint does not plead any facts even approaching that high bar.  To begin, Plaintiff gets nowhere with his conclusory allegation that the Underwriter Defendants "had actual knowledge of the misrepresentations and/or omission of material facts . . . or acted with reckless disregard for the truth in that they failed to obtain such knowledge by deliberately refraining from taking those steps necessary to discovery where the statements . . . were false and/or misleading."  (Compl. ¶¶ 359–60.)  *See Rombach v. Chang*, 355 F.3d 164, 176 (2d Cir. 2004) (A "conclusory allegation of fraudulent intent is insufficient to support an inference that the defendants acted recklessly or with fraudulent intent.").  Plaintiff attempts to buttress that bare recitation of the legal standard by alleging that a reasonable due diligence investigation would have discovered the alleged misstatements.  (Compl. ¶¶ 51, 272–77, 288–89.)  But that type of allegation "ha[s] always been insufficient to establish scienter" because it amounts to "negligence at best."  *WRT Energy,* 1999 WL 178749, at *10; *see also Am. High-income Trust v.*

*Alliedsignal*, 329 F. Supp. 2d 534, 545–46 (S.D.N.Y. 2004) (complaint failed to plead underwriter's scienter based on "speculative allegations that [the underwriter's] own due diligence should have uncovered the fraud," and "[n]one of these assertions is supported by any factual allegations other than the fact that [the defendant] acted as lead underwriter for the Private Placement."). Plaintiff pleads no facts whatsoever about the Underwriter Defendants' due diligence investigation (*see* Compl. ¶¶ 272–289), let alone specific facts that would give rise to a strong inference that the investigation was so deficient as to be "highly unreasonable."

Also inadequate are the generic allegations in the Complaint's scienter section that the Underwriter Defendants (i) received unspecified "confidential proprietary information concerning Qutoutiao" during the offerings (Compl. ¶ 288); (ii) controlled or modified Qutoutiao's alleged misstatements (*id*.); (iii) had an "association with the company" (*id*.); and (iv) are reputable, experienced financial institutions (*id*. ¶¶ 278–87). Plaintiff does not identify what documents or information the Underwriter Defendants received that would have revealed the alleged fraud. *See Adelphia Commc'ns,* 2007 WL 2615928, at *4 (requiring "specific allegations of information possessed by . . . Underwriter Defendants" to plead scienter). Nor does he specify what alleged misstatements the Underwriter Defendants "controlled or modified," or how they did so. *Vogel v. Sands Bros. & Co., Ltd.*, 126 F. Supp. 2d 730, 743 (S.D.N.Y. 2001) (requiring plaintiff to allege misstatements with particularity). And the Underwriter Defendants' unspecified "associations with the company" say nothing about their knowledge or conduct. *See Adelphia Commc'ns,* 2007 WL 2615928, at *4 ("the mere closeness of the relationship between a [] underwriter and its client" could not establish scienter); *Vogel*, 126 F. Supp. 2d at 743 ("allegations of a close relationship fail to establish the kind of circumstantial evidence necessary to support a claim of fraudulent or reckless intent."). Similarly innocuous is each underwriter's prominence and reputation in the financial industry. If

anything, it suggests the opposite of scienter—"it would be unlikely for the Underwriter Defendants to risk their reputations in order to generate fees likely amounting to only a small percentage of their annual revenues." *WRT Energy*, 1999 WL 178749, at *9.

> **B.**    **Plaintiff's Blanket Scienter Allegations Are Also Insufficient Because They Do Not Distinguish Among the Underwriter Defendants.**

The Complaint fails to plead scienter for the additional reason that it does not satisfy the obligation to plead scienter as to each Underwriter Defendant.  *See Ganino,* 228 F.3d at 168 ("The district court should review the Complaint to determine whether it meets our Circuit's pleading requirements for scienter as to each of the defendants."); *see also The Pa. Ave. Funds v. Inyx Inc.,* 2010 WL 743562, at *12 (S.D.N.Y. Mar. 1, 2010) ("[G]roup pleading of scienter ... runs afoul of the PSLRA's requirement that a plaintiff 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'"); *Lazard,* 473 F. Supp. 2d at 589 (noting, in dismissing 10(b) claim against underwriters, that "[p]laintiffs do not describe what role each of the Underwriter Defendants may have had in the process by which the IPO price was negotiated with Lazard"); *Scone Invs., L.P. v. Am. Third Mkt. Corp*., 1998 WL 205338, at *4 (S.D.N.Y. Apr.28, 1998) ("a complaint may not rely upon blanket references to the acts of all the defendants without identifying the nature of each defendant's participation in the fraud.").  Plaintiff impermissibly lumps the Underwriter Defendants together without alleging specific facts differentiating one underwriter's conduct or knowledge from that of another underwriter.  (Compl. ¶¶ 49, 272–89, 359–60.)  Such blanket allegations fall short of pleading scienter as to any of the Underwriter Defendants.

**III.    THE SECTION 10(b) CLAIM FAILS FOR THE INDEPENDENT REASON THAT THE COMPLAINT FAILS TO PLEAD FACTS SHOWING THAT THE UNDERWRITER DEFENDANTS MADE THE ALLEGED MISSTATEMENTS.**

The Underwriter Defendants should be dismissed from the Section 10(b) claim for the additional reason that the Complaint does not adequately plead that any of them made the

allegedly false statements.  17 CFR § 240.10b–5 (2010) (Rule 10b–5 prohibits "mak[ing] any untrue statement of a material fact" in connection with the purchase or sale of securities); *Janus Capital*, 564 U.S. at 142 (holding that maker of statement is "entity with ultimate authority over the statement, including its content and whether and how to communicate it.")  The Complaint does not contain nonconclusory allegations that the Underwriter Defendants had ultimate authority over the allegedly untrue or misleading statements.  This is especially true for Jefferies Group LLC, which did not even act as an underwriter in the SPO—its wholly owned subsidiary, Jefferies LLC, did.  (Decl. of Bo Bryan Jin in Support of Qutoutiao Defs.' Mot. to Dismiss, ECF No. 51, Ex. 4 at 186 (listing "Jefferies LLC" as an underwriter).)  *See Janus Capital*, 564 U.S. at 146–47 (parent company not liable for statements of its subsidiary, absent well-pleaded facts showing that the parent company had "ultimate authority" over the statements); *see generally United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.").

### A.   The Complaint Does Not Plead That the Underwriter Defendants Made the Other Qutoutiao Statements.

Plaintiff does not allege facts showing that the Underwriter Defendants made the Other Qutoutiao Statements, i.e., statements outside the Offering Documents, such as in Qutoutiao's quarterly or annual SEC filings or during quarterly analyst calls.  It is not even clear that the Complaint attempts to do so in its sweeping allegations.  Count I, for example, broadly incorporates statements "specified above," presumably including the Other Qutoutiao Statements.  (*See e.g.*, Compl. ¶ 353.)  To the extent Count I attempts to pin responsibility on the Underwriter Defendants for the Other Qutoutiao Statements, that effort fails because the

Complaint contains no allegation that the Underwriter Defendants had any involvement with (let alone ultimate authority over) those statements.  (*See, e.g.*, *id*. ¶¶ 145–52; 155–59.)

Nor can Plaintiff plead that the Underwriter Defendants are responsible for the Other Qutoutiao Statements by alleging that the Underwriters "carried out a plan, scheme, and course of conduct" by "participat[ing] in the preparation and/or dissemination or approved the false statements."  (Compl. ¶¶ 352–54.)  These generalized and conclusory allegations appear to be a half-hearted attempt to tag the Underwriter Defendants with "scheme liability" under *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019).  In *Lorenzo*, however, an investment banker "sent false statements directly to investors, invited them to follow up with questions, and did so in his capacity as vice president of an investment banking company."  *Id*. at 1101.  Based on these facts, the Court held that the banker disseminated false information to prospective investors with the intent to defraud in violation of subsections (a) and (c) of Rule 10b–5.  Here, in contrast, it is only by virtue of the Underwriter Defendants' participation in the IPO or SPO as underwriters that Plaintiff alleges that they somehow "employed a scheme to defraud."  Because Plaintiff has not satisfied his obligation to plead particularized facts showing the Underwriter Defendants' participation in any Qutoutiao "scheme," he has likewise failed to plead a basis to infer their responsibility for the Other Qutoutiao Statements.

### B.      The Complaint Does Not Plead That the Underwriter Defendants Made the Alleged Misstatements in the Offering Documents.

The Complaint likewise fails to allege facts sufficient to show that the Underwriter Defendants made the alleged misstatements in the Offering Documents.  An underwriter's mere participation in an offering does not mean that the underwriter made the challenged statements. *See Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 97 (S.D.N.Y. 2015).  In *Sharette*, the plaintiff alleged that the underwriters "prepared and/or substantially contributed to the misleading statements in the . . . prospectuses."  *Id*. 92.  The court held that such allegations were

too conclusory and general to plead that any of those underwriters made the alleged misstatements: "Plaintiffs have alleged neither the [underwriters'] role in preparing the Prospectuses, nor other facts and circumstances supporting attribution of the statements to the [underwriters]." *Id.* 93.

The same reasoning applies here. The Complaint's formulaic allegations simply track the holding of *Janus* without specifying the Underwriter Defendants' role or alleging facts to support attributing to them ultimate authority over the Offering Documents' statements. The Complaint alleges that the Underwriter Defendants "had control over the contents and dissemination of the IPO Prospectus and/or the SPO Prospectus," that "their names are prominently featured on the cover of the Prospectus," that "the co-managing underwriters actively participated in creating the Prospectus," and that Underwriter Defendants "provided final approval for the contents of the Offering Documents before they were filed with the SEC and issued to the public." (Compl. ¶¶ 51, 276, 357). These generalized and conclusory allegations parrot *Janus'* requirements without providing any factual support. *See Shield v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) (the "pleading technique [that] couple[s] a factual statement with a conclusory allegation of" an element is insufficient "in the context of securities fraud claims [because] such allegations are so broad and conclusory as to be meaningless.") Underwriters, for example, appear on the prospectus cover page in every public offering. If that were enough to render every underwriter the "maker" of every statement in every offering prospectus, then *Janus*'s requirement to determine "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it" would be eviscerated. *See Janus Capital*, 564 U.S at 143 ("Reading 'make' more broadly. . . would substantially undermine *Central Bank* by rendering aiders and abettors almost nonexistent.")

Comparing the meager allegations here with pleadings that have survived a motion to dismiss only highlights the Complaint's shortcomings.  In *In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 261 (S.D.N.Y. 2014), for example, the complaint alleged that (i) the underwriters "actively participated in creating the Prospectus, drafting it jointly with Puda management"; (ii) "Puda agreed to prepare the Prospectus in a form approved by the [underwriters]"; and (iii) "on the morning of the . . . offering, Puda's counsel sent an email stating that, while the 'Company has signed off,' Puda's counsel still did not have 'the underwriters' sign off.'"  *Id.* at 267.  The Complaint here does not allege any such non-conclusory facts showing the Underwriter Defendants' control or authority over the Offering Documents' statements.

## CONCLUSION

For the reasons set forth above and in the Qutoutiao Defendants' Brief, the Court should dismiss the claims against the Underwriter Defendants with prejudice.

Dated: March 16, 2021

O'MELVENY & MYERS LLP

By: /s/ Jonathan Rosenberg

Jonathan Rosenberg
jrosenberg@omm.com
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

William K. Pao (*admitted pro hac vice*)
wpao@omm.com
400 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

*Attorneys for Defendants Citigroup Global
Markets Inc., Deutsche Bank Securities
Inc., China Merchants Securities (HK) Co.,
Ltd., UBS Securities LLC, KeyBanc Capital
Markets Inc., and Jefferies Group LLC*