UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re QUTOUTIAO, INC. SECURITIES LITIGATION | Master File No.: 1:20-cv-06707 (SHS)<br><br>__CLASS ACTION__ |
| This Document Relates To :<br><br>ALL ACTIONS. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR LEAVE FOR ALTERNATIVE SERVICE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

I.    PRELIMINARY STATEMENT .................................................................................. 1

II.   BACKGROUND ........................................................................................................ 2

      A.    Plaintiff is Appointed as Lead Plaintiff, Prepares the Complaint, and
            Commences Service .................................................................................... 2

      B.    Plaintiff's Efforts to Serve the Defendants .............................................. 4

            i.    The Unserved Underwriter Defendants .......................................... 5

            ii.   The Unserved Individual Defendants ............................................. 7

      C.    Plaintiff's Efforts to Locate Alternative Avenues of Service.................... 9

III.  ARGUMENT ............................................................................................................ 10

      A.    Plaintiff has Diligently Attempted to Serve Defendants. ...................... 11

      B.    The Proposed Means of Alterative Service on the Unserved Defendants
            are not Prohibited by the Hague Convention or International Law and Comport
            with Due Process. ................................................................................... 14

IV.   CONCLUSION........................................................................................................ 21

## TABLE OF AUTHORITIES

**Cases**

*Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*,
    2018 WL 4757939 (S.D.N.Y. Sept. 30, 2018) ..................................................... 12, 13

*Advanced Aerofoil Techs., AG v. Todaro*,
    2012 WL 299959 (S.D.N.Y. Jan. 31, 2012) ............................................................ 11

*Allstar Mktg. Grp., LLC v. Aoyatex Co.*,
    2021 WL 3501011 (S.D.N.Y. Aug. 9, 2021) ....................................................... 14, 16

*Altos Hornos de Mex., S.A.B. de C.V. v. Rock Res. Ltd.*,
    2015 WL 6437384 (S.D.N.Y. Oct. 19, 2015) .......................................................... 10

*Berluti SA v. Berlutishoeoutlet.com*,
    2020 WL 6078055 (S.D. Fla. Apr. 9, 2020) ....................................................... 15, 16

*Brown v. China Integrated Energy, Inc.*,
    285 F.R.D. 560 (C.D. Cal. 2012) .......................................................................... 15

*Convergen Energy LLC v. Brooks*,
    2020 WL 4038353 (S.D.N.Y. July 17, 2020) .......................................................... 11

*Cunningham v. Gen. Motors LLC*,
    2020 WL 4748157 (S.D.N.Y. Aug. 17, 2020) ......................................................... 16

*F.T.C. v. PCCare247*,
    2013 WL 841037 (S.D.N.Y. Mar. 7, 2013) ........................................................ 15, 17

*F.T.C. v. Pecon Software Ltd.*,
    2013 WL 4016272 (S.D.N.Y. Aug. 7, 2013) ........................................................... 15

*Fisher v. Petr Konchalovsky Found.*,
    2016 WL 1047394 (S.D.N.Y. Mar. 10, 2016) ......................................................... 11

*Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*,
    2018 WL 3330022 (N.D. Tex. Mar. 16, 2018) ........................................................ 12

*Gurung v. Malhotra*,
    279 F.R.D. 215 (S.D.N.Y. Nov. 22, 2011) ........................................................ 15, 17

*Hardin v. Tron Found.*,
    2020 WL 5236941 (S.D.N.Y. Sept. 1, 2020) ...................................................... 15, 17

*In GLG Life Tech. Sec. Litig.*,
    287 F.R.D. 262 (S.D.N.Y. 2012) ...................................................................... 12, 15

*In re Bibox Grp. Holdings Ltd. Sec. Litig.*,
    2020 WL 4586819 (S.D.N.Y. Aug. 10, 2020) ......................................... 12, 13, 15, 17

*Jian Zhang v. Baidu.com Inc.*,
    293 F.R.D. 508 (S.D.N.Y. 2013) ...................................................................... 11, 14

*Kaneka Corp. v. Purestart Chem Enter. Co.*,
    2017 WL 11509784 (E.D.N.Y. Oct. 17, 2017) ........................................................ 13

*Mattel, Inc. v. Amimefun Store,*
  2020 WL 2097624 (S.D.N.Y. May 1, 2020) ........................................................ 16

*Nurlybaev v. ZTO Express (Cayman) Inc.,*
  2018 WL 11222556 (S.D.N.Y. Apr. 6, 2018) ..................................................... 11

*Oscilloscope Pictures, Inc. v. Monbo,*
  2019 WL 2436296 (E.D.N.Y. Feb. 22, 2019) ................................................ 14, 17

*Peifa Xu v. Gridsum Holding Inc.,*
  2020 WL 1508748 (S.D.N.Y. Mar. 30, 2020) .................................................... 14

*Philip Morris USA Inc. v. Veles Ltd.,*
  2007 WL 725412 (S.D.N.Y. Mar. 12, 2007) ..................................................... 16

*Rio Props., Inc. v. Rio Int'l Interlink,*
  284 F.3d 1007 (9th Cir. 2002) ........................................................................ 11

*S.E.C. v. Anticevic,*
  2009 WL 361739 (S.D.N.Y. Feb. 13, 2009) ................................................ 11, 17

*S.E.C. v. Lines,*
  2009 WL 2431976 (S.D.N.Y. Aug. 7, 2009) ................................................ 11, 13

*S.E.C. v. Lines,*
  2009 WL 3179503 (S.D.N.Y. Oct. 2, 2009) ...................................................... 13

*S.E.C. v. Nnebe,*
  2003 WL 402377 (S.D.N.Y. Feb. 21, 2003) ..................................................... 13

*S.E.C. v. Shehyn,*
  2008 WL 6150322 (S.D.N.Y Nov. 26, 2008) .................................................... 12

*Smart Study Co. v. Beijing Longteng Yunqi Trade Co.,*
  2021 WL 2737392 (S.D.N.Y. July 1, 2021) ...................................................... 16

*Smith v. Islamic Emirate of Afg.,*
  2001 WL 1658211 (S.D.N.Y. Dec. 26, 2001) ................................................... 17

*Stream SICAV v. Wang,*
  989 F. Supp. 2d 264 (S.D.N.Y. 2013) ........................................................ 14, 15

*Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd.,*
  312 F.R.D. 329 (S.D.N.Y. 2015) ..................................................................... 14

*U.S. v. Besneli,*
  2015 WL 4755533 (S.D.N.Y. Aug. 12, 2015) ................................................... 11

*Ultra Recs., LLC v. Chee Yee Teoh,*
  2017 WL 1753485 (S.D.N.Y. Apr. 18, 2017) ................................................... 13

*Volkswagenwerk Aktiengesellschaft v. Schlunk,*
  486 U.S. 694 (1988) ...................................................................................... 12

*Wei Su v. Sotheby's, Inc.,*
  2018 WL 4804675 (S.D.N.Y. Oct. 3, 2018) ..................................................... 10

*Xiaoyuan Zhang v. Valaris plc*,
    2021 WL 982460 (S.D.N.Y. Mar. 16, 2021) ............................................................. 11

**Other Authorities**

Fed. R. Civ. P. 4(f)(3) ......................................................................................... 1, 2, 21

Hague Convention on Service Abroad of Judicial and Extrajudicial Documents art. 10,
    Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 ................................................... 14

Plaintiff James Pappas ("Plaintiff") respectfully submits this memorandum of law in support of his motion for service of process by alternative means, pursuant to Federal Rule of Civil Procedure ("Rule") 4(f)(3), on Defendants Eric Siliang Tan ("Tan"), Lei Li ("L. Li"), Jingbo Wang ("Wang"), Xiaolu Zhu ("Zhu"), Shaoqing Jiang ("Jiang"), Jianfei Dong ("Dong"), Yongbo Dai ("Dai"), James Jun Peng ("Peng"), and Feng Li ("F. Li") (collectively, "Unserved Individual Defendants"), as well as, Haitong International Securities Company Limited ("Haitong") and Lighthouse Capital International Inc. ("Lighthouse," together with Haitong, the "Unserved Underwriter Defendants") (collectively, "Unserved Defendants") named in the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint") (ECF No. 41).[1]

## I.    PRELIMINARY STATEMENT

Although Plaintiff successfully served Defendants Qutoutiao, Inc. ("QTT" or the "Company"), Oliver Yucheng Chen ("Chen"), Citigroup Global Markets Inc. ("Citigroup"), Deutsche Bank Securities Inc. ("Deutsche"), China Merchants Securities (HK) Co., Ltd. ("CMS"), UBS Securities LLC ("UBS"), and Keybanc Capital Markets Inc. ("Keybanc"), more than a year ago (*see* ECF No. 27); Jefferies Group LLC ("Jefferies") nearly ten months ago (*see* ECF No. 44); and CLSA Limited ("CLSA") more than four months ago (*see* ECF No. 69), current and former high-level officers of QTT, and entities integral to the Company's public offerings at issue in this case, have not appeared in this action. Instead, they have leveraged their predominately online-only and/or foreign operations to avoid public tracing—and, by extension, service—and have hidden behind the shield of notoriously slow (and frequently ineffective) international service.

Service of process is intended to fairly apprise a defendant of a pending action and the

---

[1] Unless otherwise noted, all emphasis has been added, and internal citations have been omitted. Capitalized terms that are not defined have the meanings ascribed in the Complaint.

claims against them. It is not meant to be a game of "cat and mouse," whereby individuals or entities take advantage of American markets and investors—as the Complaint alleges the Unserved Defendants have done—and then seek to skirt liability by evading service.

As described below, Plaintiff, through his counsel, has undertaken exhaustive efforts to serve the Unserved Defendants. Plaintiff has expended significant resources searching through corporate records, social media accounts, websites, blog posts, interviews, government registries, business addresses, and residential addresses both in the United States and abroad. Plaintiff has also attempted to serve the Unserved Defendants through the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"). Notwithstanding these diligent efforts, Plaintiff has been unable to effectuate service on the Unserved Defendants.

Plaintiff now seeks to complete service on the Unserved Defendants through alternative means pursuant to Rule 4(f)(3). The proposed means (service *via* personal email, corporate portals, website publication, and/or social media) are not prohibited by international agreement and comport with due process requirements and, therefore, are routinely authorized in this District. Absent alternative service, these Unserved Defendants will delay the redress Plaintiff and the Class seek for Defendants' misconduct.

## II.     BACKGROUND

### A.     Plaintiff is Appointed as Lead Plaintiff, Prepares the Complaint, and Commences Service

On August 20, 2020, Steven Burnham filed a Class Action Complaint for Violations of the Federal Securities Laws against QTT, Tan, L. Li, Wang, Zhu, Jiang, Dong, Chen, Citigroup, Deutsche, CMS, UBS, and KeyBanc, *Burnham v. Qutoutiao, Inc. et al.*, No. 20-cv-06707-SHS (S.D.N.Y.) (the "*Burnham* Complaint"). On September 18, 2020, Howard Brown filed a related

action against QTT, Tan, L. Li, Wang, Zhu, Jiang, Dong, and Chen, *Brown v. Qutoutiao, Inc. et al.,* No. 20-cv-07717-SHS (S.D.N.Y.) (the "*Brown* Complaint") (collectively, the "Related Actions"). On October 19, 2020, Plaintiff timely filed a Motion for Consolidation of the Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel. ECF No. 10. On November 4, 2020, the Court consolidated the Related Actions and appointed Plaintiff to serve as Lead Plaintiff for the Class. *See* ECF No. 22.

On November 17, 2020, through joint stipulation with Plaintiff, counsel for QTT and Chen accepted service of the *Burnham* Complaint and *Brown* Complaint, and counsel for Citigroup, Deutsche, CMS, UBS, and Keybanc, accepted service of the *Burnham* Complaint on their behalf. ECF No. 27. Service was to be deemed effective upon the Court's approval. *See id.* The next day, the Court approved the stipulation. ECF No. 28. Notably, counsel representing QTT and Chen, did not accept service of the Related Actions on behalf of Defendants Tan, L. Li, Wang, Zhu, Jiang, or Dong. *See* ECF No. 27.

On January 15, 2021, Plaintiff filed the Complaint on behalf of himself and on behalf of a proposed class consisting of all persons or entities who: (a) purchased or otherwise acquired QTT securities pursuant or traceable to QTT's September 2018 initial public offering; (b) purchased or otherwise acquired QTT's securities pursuant or traceable to the Company's April 2019 secondary public offering; and/or (c) purchased or otherwise acquired QTT securities between September 14, 2018 and December 16, 2020, inclusive (the "Class Period"). *See* ECF No. 41. The Complaint alleges violations of Sections 11, 12, and 15 of the Securities Act of 1933, Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, against QTT, Tan, L. Li, Wang, Zhu, Jiang, Dong, Chen, Dai, Peng, F. Li, Citigroup, Deutsche, CMS, UBS, KeyBanc, CSLA, Haitong, Lighthouse, and Jefferies. *Id.* On January 20, 2021, Plaintiff filed a

3

new Summons in a Civil Action for the Defendants not previously named in the Related Actions. ECF No. 42.

**B.     Plaintiff's Efforts to Serve the Defendants**

After being appointed as Lead Plaintiff, Plaintiff began his exhaustive investigation to locate and serve each of the Defendants, starting with those named in the Related Actions. *See* Declaration of Constantine P. Economides ("Economides Decl.") ¶ 4. On January 29, 2021—after filing the Complaint—Plaintiff utilized a process server to effectuate service on Defendant Jeffries. *See* ECF No. 44.

Plaintiff also located an international address for Defendant CLSA at 18/F, One Pacific Place, 88 Queensway, Hong Kong, China. Economides Decl. ¶ 5. On March 25, 2021, pursuant to the Hague Convention, Plaintiff submitted a Request for Service Aboard of Judicial or Extrajudicial Documents ("Hague Request") with the Chinese Central Authority ("CCA") to serve Defendant CSLA. *Id.* at ¶ 6. After receiving a notice from the CCA that the Hague Request to serve CLSA could not be approved until the address was altered to read "Hong Kong SAR, China" instead of "Hong Kong, China," Plaintiff corrected the address and resubmitted the Hague Request on June 30, 2021. *Id.* at ¶ 7.

On August 20, 2021, the CCA served CLSA at its offices in Hong Kong. *See* ECF No. 69. On September 3, 2021, the CCA sent Plaintiff, via registered mail, the notice of successful service. Economides Decl. ¶ 10. Thereafter, on September 9, 2021, Plaintiff and CLSA filed a joint stipulation regarding the time for CLSA to respond to the Complaint, and CLSA waived arguments challenging the service. *See* ECF No. 69.

Furthermore, Plaintiff searched domestic and international records—including business filings, social media posts, websites, blog posts, corporate affiliation websites, contact information websites, government registries, and media and online interviews—to locate the other Defendants.

Economides Decl. ¶¶ 2-3. Despite his diligence, however, Plaintiff has been unable to serve the Unserved Defendants.

i.   *The Unserved Underwriter Defendants*

Plaintiff conducted an exhaustive investigation to identify addresses for the Unserved Underwriter Defendants. *Id.* at ¶ 2. As a result, Plaintiff obtained an international address for: (a) Haitong at 22/F Li Po Chun Chambers, 189 Des Voeux Road Central, Hong Kong, China; and (b) Lighthouse at Room 3891, China Life Finance Centre, No. 88, Yincheng Road, Shanghai 200120, China. *Id.* at ¶¶ 5-6. On March 25, 2021, pursuant to the Hague Convention, Plaintiff submitted Hague Requests to serve Defendants Haitong and Lighthouse. *Id.* at ¶ 6.

After receiving a notice from the CCA indicating that the Hague Request to serve Haitong could not be approved until the address was altered to read "Hong Kong SAR, China" instead of "Hong Kong, China," Plaintiff corrected the address and resubmitted the Hague Request to serve Defendant Haitong on June 30, 2021. *Id.* at ¶ 7. On September 3, 2021, the CCA dispatched a letter notice to Plaintiff containing a certificate of attestation, dated August 24, 2021, noting that Defendant Haitong was unable to be served at the address provided in Plaintiff's June 30th Hague Request. *Id.* at ¶ 11.

Following the unsuccessful attempt to serve Defendant Haitong pursuant to the Hague Convention, Plaintiff sought alternative means of effectuating service. According to the prospectus for QTT's second public offering Defendant Haitong "offer[ed] the ADSs in the United States through its SEC-registered broker-dealer affiliate in the United States, Haitong International Securities (USA) Inc." ("HIS USA").

HIS USA filed with the SEC, on December 31, 2020, Notes to Financial Statements, signed by Sean M. Forbes, President and CFO, providing that HIS USA "is a wholly owned subsidiary of

Haitong International (BVI) Limited, a company owned by Haitong International Securities Group Limited (["HIS Group"]), within the Haitong Securities Group of companies." *See* Economides Decl. ¶ 15. Defendant Haitong and HIS Group are wholly owned subsidiaries of Haitong Securities Company Limited. *Id.* Further, HIS USA's Notes to Financial Statements went on to explain the company earns commissions through trading securities pursuant to a 15a-6 chaperoning agreement "with its foreign affiliate, Haitong International Securities Company Limited" (*i.e.*, Defendant Haitong). *Id.*

Relying on this information, Plaintiff engaged a process server to effectuate service on Defendant Haitong through its registered agent, HIS USA, at 340 Madison Avenue, 12th Floor, New York, New York, 10173. *Id.* On October 1, 2021, the process server visited the provided address and was informed by building security that no one was in the specified office, and when the process server called the business number, the receptionist hung up on him. *Id.* at ¶ 16. Next, the process server visited the known personal address of Sean M. Forbes, President and CFO of HIS USA, and President and Chief Compliance Officer of Haitong Securities USA LLC. *Id.* When asked to come to the building entrance, Mr. Forbes refused and claimed he was not an agent for Defendant Haitong and would not accept service. *See id.* Despite those efforts, therefore, Plaintiff has been unable to effectuate service on Defendant Haitong in China or *via* an agent in the U.S.

Although Plaintiff's original Hague Request for Defendant Lighthouse is still pending, Plaintiff has continued his exhaustive efforts to effectuate service. Through his investigation, Plaintiff found three additional international addresses associated with Defendant Lighthouse: (i) F726, Block C, China Resources Land Building, No. 9668 Shennan Avenue, Nanshan District, Shenzhen 518052, People's Republic of China; (ii) Room 2017, Citigroup Building, No. 33 Huayuan Shiqiao Road, Pudong New District, Shanghai 200120, People's Republic of China; and

(iii) Qihao Beijing West Tower 1809, No. 8 Xinyuan South Road, Chaoyang District, Beijing 100102, People's Republic of China. *Id.* at ¶ 19. Out of an abundance of caution, Plaintiff revised his Hague Request to include the additional addresses and submitted the updated request *via* email with the CCA on October 13, 2021. *Id.*

In addition, Plaintiff identified Defendant Lighthouse's purported "English team" located at 200 Spectrum Center Drive, Suite 300, Irvine, California 92618. *Id.* at ¶ 20. Plaintiff engaged a process server, who attempted to effectuate service on Defendant Lighthouse at this address on October 1, 2021. *Id.* However, on October 15, 2021, Plaintiff received confirmation that the process server was unable to serve Defendant Lighthouse at this location. *Id.* As such, despite Plaintiff's continued efforts, he has not served Defendant Lighthouse in the U.S. or China.

ii. <u>The Unserved Individual Defendants</u>

Similarly, Plaintiff conducted an exhaustive investigation to identify addresses for the Unserved Individual Defendants. *Id.* at ¶ 2. On March 25, 2021, Plaintiff submitted Hague Requests with the CCA to serve Defendants Dai, F. Li, and Peng at their last known physical address, QTT's headquarters, located at 11/F, Block 3, XingChuang Technology Center, Shen Jiang Road 5005, Pudong New Area, Shanghai, 200120, People's Republic of China. *Id.* at ¶ 6. On June 30, 2021, Plaintiff also submitted Hague Requests with the CCA to serve Defendants Tan, L. Li, Wang, Zhu, Jiang, and Dong at their last known physical address, QTT's headquarters, located at 11/F, Block 3, XingChuang Technology Center, Shen Jiang Road 5005, Pudong New Area, Shanghai, 200120, People's Republic of China. *Id.* at ¶ 8.

On August 25, 2021, Plaintiff received certificates of attestation that Defendants Dai, Peng, and F. Li were unable to be served at the address provided in Plaintiff's March 25th Hague Requests. *Id.* at ¶ 9. The June 30th Hague Requests to serve Defendants Tan, L. Li, Wang, Zhu,

Jiang, and Dong are still pending, but Plaintiff believes service will fail for those individuals as well. Accordingly, on September 24, 2021, Plaintiff's counsel contacted counsel for Defendants QTT and Chen requesting the most recent forwarding address the Company had on file for the Unserved Individual Defendants. *Id.* at ¶ 12. While awaiting a response, Plaintiff continued his efforts to find additional addresses for service on the Unserved Individual Defendants. *Id.* at ¶ 13.

First, Plaintiff obtained the address for Defendant Tan's California home and engaged a process server to attempt service at 18 Harbor Island, Newport Beach, California 92660. *Id.*[2] However, on October 4, 2021, Plaintiff received confirmation that the process server had failed to serve Defendant Tan. *Id.*

Second, Plaintiff found that Defendant Peng is the co-founder and CEO of Pony.ai, Inc., a company incorporated in Delaware, with its principal office located at 3501 Gateway Blvd., Fremont, California 94538. *Id.* at ¶ 21. Indeed, Pony.ai's corporate statement of information, filed with the California Secretary of State, lists Defendant Peng as the CEO, Secretary and CFO, with his address listed as the same address of the company. *See id.* On October 1, 2021, Plaintiff engaged a process server to attempt service on Defendant Peng at 3501 Gateway Blvd., Fremont, California 94538, and service was successfully effectuated that day. ECF No. 70. However, as of the date of this motion, Defendant Peng has not entered an appearance in this action. Economides Decl. ¶ 23.

Third, Plaintiff discovered that Defendant Dai currently serves as Managing Partner of Shenzhen Country Garden Innovation Investment, Country Garden Venture Capital. *Id.* at ¶ 14. While serving as a Director of QTT, the Company claimed Defendant Dai was Managing Partner of Shenzhen Paladin Asset Management, another subsidiary of Country Garden Holding Co. Ltd.

---

[2] As noted in the Complaint, in 2019 Defendant Tan reportedly purchased a home for $37 million in Orange County, California. ¶ 66, n.8.

*Id.* Based on this information, on October 1, 2021, Plaintiff submitted a Hague Request with the CCA to serve Defendant Dai at Country Garden Center, 1 Country Garden Road, Beijiao Town, Shunde District, Foshan Guangdong 528312, People's Republic of China. *See id.*

Fourth, Plaintiff discovered that Defendant Wang is currently serving as CFO of Agora.io. *Id.* at ¶ 17. Therefore, on October 8, 2021, Plaintiff updated the Hague Request with the CCA to serve Wang at Agora.io's headquarters located at Floor 8, Building 12, Phase III of ChuangZhiTianDi, 333 Songhu Road, Yangpu District, Shanghai, People's Republic of China. *Id.*

Fifth, Plaintiff learned that Defendant Jiang is currently serving as the operational director of Chengwei Capital. *Id.* at ¶ 18. As such, on October 8, 2021, Plaintiff updated the Hague Request with the CCA to serve Jiang at Chengwei Capital, located at Building C No. 33, Lane 672, Changle Road, Jiang'an District, Shanghai, Shanghai 200040, People's Republic of China. *Id.*

Finally, on October 18, 2021, counsel for Defendants QTT and Chen responded to Plaintiff's request, stating that Defendants Dai, Wang, and Jiang are no longer affiliated with the Company and that QTT does not have their addresses. *Id.* at ¶ 22. Counsel did, however, provide a forwarding address for Defendants Tan, Zhu, Dong, Peng, F. Li, and L. Li. *See id.* Following this response, on October 21, 2021, Plaintiff updated the Hague Requests to serve Defendants Tan, Zhu, Dong, F. Li, and L. Li at the addresses provided by Mr. Jin. *Id.*[3]

### C.   Plaintiff's Efforts to Locate Alternative Avenues of Service

Although Plaintiff still has pending Hague Requests, responses from the CCA are expected to take several months. Moreover, there is no certainty that the identified addresses will be correct whenever the CCA attempts service, and even if the addresses are correct, the service attempts

---

[3] As discussed in detail above, Plaintiff successfully effectuated service on Defendant Peng at an address in California on October 1, 2021; therefore, Plaintiff did not submit a new Hague Request for Defendant Peng.

may fail. At that point, Plaintiff would need to start that process all over again—as already seen with several of the Unserved Defendants.

Accordingly, Plaintiff has expanded his investigation to identify other avenues for service of process on the Unserved Defendants. *Id.* at ¶ 23. Plaintiff has identified personal and/or work emails, social media accounts, and/or affiliated corporate websites. *Id.* Further, Plaintiff has created a webpage, https://qutoutiaosecuritieslitigation.com/, dedicated exclusively to the publication of requisite documents to notify the Unserved Defendants of the pendency of this litigation. For the reasons stated below, Plaintiff respectfully requests leave to effectuate service on the Unserved Defendants through those alternative means.

## III.   ARGUMENT

"Under Federal Rule of Civil Procedure 4(f)(3), service may be effected upon individuals in foreign countries by any means 'not prohibited by international agreement, as the court orders." *Wei Su v. Sotheby's, Inc.*, 2018 WL 4804675, at *3 (S.D.N.Y. Oct. 3, 2018). "The decision of whether to order service of process under Rule 4(f)(3) is committed to the sound discretion of the district court." *Id.* "Before ordering alternative service under this rule, district courts in this Circuit have **generally** required: (1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." *Id.* "Additionally, before ordering alternative service, courts must ensure that the means of service comports with constitutional notions of due process." *Id.*

Nonetheless, a "plaintiff is *not* required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)." *Altos Hornos de Mex., S.A.B. de C.V. v. Rock Res. Ltd.*, 2015 WL 6437384, at *2 (S.D.N.Y. Oct. 19, 2015). While courts may consider a plaintiff's efforts to effectuate service on a defendant, "[e]xhaustion of the other

10

provisions of Rule 4(f) is not required before a plaintiff seeks court-ordered service." *U.S. v. Besneli*, 2015 WL 4755533, at *1 (S.D.N.Y. Aug. 12, 2015).

"In other words, Rule 4(f)(3) is merely one means among several which enables service of process on an international defendant and is neither a 'last resort' nor 'extraordinary relief." *Jian Zhang v. Baidu.com Inc.,* 293 F.R.D. 508, 512 (S.D.N.Y. 2013); *see also Advanced Aerofoil Techs., AG v. Todaro*, 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012) (there is "no hierarchy among the subsections in Rule 4(f)"); *Convergen Energy LLC v. Brooks*, 2020 WL 4038353, at *4 (S.D.N.Y. July 17, 2020) (same); *S.E.C. v. Anticevic*, 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) (Rule 4(f)(3) "provides the Court with flexibility and discretion empowering courts to fit the manner of service utilized to the facts and circumstances of the particular case.").

Accordingly, courts in this District routinely exercise "wide discretion" to permit alternative service. *Xiaoyuan Zhang v. Valaris plc*, 2021 WL 982460, at *2 (S.D.N.Y. Mar. 16, 2021) (*quoting Fisher v. Petr Konchalovsky Found.,* 2016 WL 1047394, at *2 (S.D.N.Y. Mar. 10, 2016)); *see also Nurlybaev v. ZTO Express (Cayman) Inc.,* 2018 WL 11222556, at *1–*2 (S.D.N.Y. Apr. 6, 2018); *Baidu.com Inc.,* 293 F.R.D. at 515; *S.E.C. v. Lines,* 2009 WL 2431976, at *2 (S.D.N.Y. Aug. 7, 2009); *see also Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002).

Under those standards, alternative service on the Unserved Defendants is appropriate. First, Plaintiff has diligently attempted to serve Defendants. Second, the proposed means of alterative service on the Unserved Defendants are not prohibited by the Hague Convention or international law and comport with due process.

### A.    Plaintiff has Diligently Attempted to Serve Defendants.

Plaintiff undertook prompt and extensive efforts to effectuate service on each of the twenty Defendants, but to date, only nine have accepted service and entered an appearance in this case.

Although not a prerequisite to alternative service, Plaintiff has exhausted his efforts to serve the remaining eleven Unserved Defendants under Rule 4(f).

The Hague Convention governs where "there is occasion to transmit a judicial or extrajudicial document for service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). "Service under the Hague Convention is commenced when a plaintiff requests that the 'Central Authority' of a signatory country effect service on a defendant residing within that country."[4] *S.E.C. v. Shehyn*, 2008 WL 6150322, at *3 (S.D.N.Y Nov. 26, 2008).

However, courts have frequently cited delays in service under the Hague Convention, and the likelihood that such requests will ultimately be unsuccessful, as supporting an order of alternative service under Rule 4(f)(3). *See In GLG Life Tech. Sec. Litig.*, 287 F.R.D. 262, 266-67 (S.D.N.Y. 2012) ("Given the [un]certainty that service … will result in notice … and given that service via the Hague Convention would be a pointless and lengthy exercise, an order of alternative service is justified."). Indeed, courts have acknowledged that "effectuating service in China is both protracted and often with no certainty that the address for service is correct or defendant will be served." *In re Bibox Grp. Holdings Ltd. Sec. Litig.,* 2020 WL 4586819 (S.D.N.Y. Aug. 10, 2020); *see also Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.,* 2018 WL 3330022, at *1 (N.D. Tex. Mar. 16, 2018) ("[T]he Central Authority in China does not provide a means for checking the status of a service request.").

Moreover, the Hague Convention does not apply "where the address of the person to be served with the document is not known." *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, 2018 WL 4757939, at *4 (S.D.N.Y. Sept. 30, 2018) (quoting Convention on the Service

---

[4] The United States and China are signatories to the Hague Convention. *See* https://www.hcch.net/en/states/hcch-members (last visited September 30, 2021) (listing current contracting states).

Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, art. I); *see also S.E.C. v. Lines*, 2009 WL 3179503, at *3 (S.D.N.Y. Oct. 2, 2009) ("As Article I of the Hague Convention quite understandably recognizes, it shall not apply where the address of the person to be served with the document is not known."). "Courts in this Circuit have found an address is 'not known' if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so." *Shen*, 2018 WL 4757939, at *4; *see, e.g., Bibox*, 2020 WL 4586819, at *3 ("In light of the impracticability of plaintiff's efforts, the addresses of the Unserved Defendants are essentially unknown, rendering the Hague Convention service procedures inapposite.").

Additionally, courts in this Circuit routinely permit alternative service of process where opaque actors have eluded efforts at serving process. *See Ultra Recs., LLC v. Chee Yee Teoh*, 2017 WL 1753485, at *2 (S.D.N.Y. Apr. 18, 2017) (authorizing alternative service by email where attempts to serve by mail under the Hauge Convention were not "able to be delivered"); *see also Lines*, 2009 WL 2431976, at *2 (granting motion for alternative service where Plaintiff "made unsuccessful efforts to serve each of the Unserved Defendants through the appropriate Central Authority"); *S.E.C. v. Nnebe*, 2003 WL 402377, at *1, *3 (S.D.N.Y. Feb. 21, 2003) (permitting alternative service after investigation did not result in current address for defendant); *Bibox*, 2020 WL 4586819, at *2-*3 (permitting alternative service when plaintiff was unable to determine a defendant's address despite using a private investigator); *Kaneka Corp. v. Purestart Chem Enter. Co.*, 2017 WL 11509784, at *3 (E.D.N.Y. Oct. 17, 2017) ("Insomuch as the Hague Convention is not applicable, an alternative method of service is appropriate under Rule 4(f)(3).").

Here, as discussed in detail *supra*, Plaintiff submitted Hague Requests with the CCA to effectuate service on all Unserved Defendants. Some have already proven to be unsuccessful, and

others are still pending. Addresses remain unknown, and the failed service attempts suggest that at least some Unserved Defendants are evading service. Therefore, Plaintiff has acted diligently and has made the requisite showing to use alternative means to serve the Unserved Defendants pursuant to Rule 4(f)(3). *See Baidu.com Inc*., 293 F.R.D. at 512 ("[I]t should not, and does not, matter whether service was attempted pursuant to Rule 4(f)(1) or (2) and, if so, whether or why such service was unsuccessful"); *Peifa Xu v. Gridsum Holding Inc*., 2020 WL 1508748, at *14 (S.D.N.Y. Mar. 30, 2020) ("There is no strict requirement that a plaintiff pursue service through an international agreement before asking a court's assistance in ordering alternative service").

### B.   The Proposed Means of Alterative Service on the Unserved Defendants are not Prohibited by the Hague Convention or International Law and Comport with Due Process.

Although China has objected to the methods of service set out in Article 10 of the Hague Convention, courts in this District, and elsewhere, have found that alterative service through email, corporate portal, publication, and/or social media do not violate the Hague Convention or international law.[5] *See Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd.*, 312 F.R.D. 329, 331–32 (S.D.N.Y. 2015) (examining case law and concluding that "China's objection to service by postal mail does not cover service by email"); *Stream SICAV v. Wang,* 989 F. Supp. 2d 264, 279 (S.D.N.Y. 2013) (allowing for high-level employees to be served through the defendant corporation); *Allstar Mktg. Grp., LLC v. Aoyatex Co.,* 2021 WL 3501011, at *4 (S.D.N.Y. Aug. 9, 2021) (permitting alternative service *via* website publication through a specific page dedicated to the lawsuit); *Oscilloscope Pictures, Inc. v. Monbo,* 2019 WL 2436296, at *2 (E.D.N.Y. Feb. 22, 2019) (accepting Twitter as an acceptable method for alternative service); *F.T.C. v. PCCare247,*

---

[5] Article 10 of the Hague Convention permits service through "postal channels" or through judicial officers or officials in the state of destination provided that, the signatory does not object to the use of those alternative means. Hague Convention on Service Abroad of Judicial and Extrajudicial Documents art. 10, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

2013 WL 841037, at *6 (S.D.N.Y. Mar. 7, 2013) (allowing plaintiff to effectuate service *via* Facebook); *Bibox*, 2020 WL 4586819, at *2-*3 (granting plaintiff's request to service defendants through various social media accounts); *Hardin v. Tron Found.*, 2020 WL 5236941 (S.D.N.Y. Sept. 1, 2020) (finding LinkedIn is an appropriate alternative method of service). In addition, those means comport with constitutional notions of due process which requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Bibox*, 2020 WL 4586819, at *2.

"[c]ourts have sensibly held that service on a high-level employee's corporate employer, or counsel for that employer, is 'reasonably calculated' to apprise the employee of the pendency of the action and therefore comports with due process." *Stream SICAV*, 989 F. Supp. 2d at 279; *see also GLG*, 287 F.R.D. at 267 ("[O]bviously a corporation will inform its own Chairman and Chief Executive Officer of a lawsuit pending against him."); *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 566 (C.D. Cal. 2012) (unserved officers' and directors' "close connection" with the corporation make it "all but certain" that directors served "will receive notice of the suit"). For the same reasons, courts have also accepted service through a company's online portal as comporting with due process. *See Berluti SA v. Berlutishoeoutlet.com,* 2020 WL 6078055, at *2 (S.D. Fla. Apr. 9, 2020) ("Service by e-mail and website posting are therefore reasonably calculated, under all circumstances, to apprise Defendants of the pendency of the action and afford them an opportunity to present their objections.").

Critically, "[s]ervice by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant." *F.T.C. v. Pecon Software Ltd.*, 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013) (citing *Gurung v. Malhotra*, 279 F.R.D. 215, 220 (S.D.N.Y. Nov. 22, 2011)); *Cunningham v. Gen. Motors LLC,* 2020 WL 4748157, at *1–*2

(S.D.N.Y. Aug. 17, 2020) (finding that service on a German defendant *via* email comported with due process where "based on the email-tracking tool used by [the plaintiffs, the defendant] opened the email sent to him a mere [twelve] minutes after it was sent to him"); *Mattel, Inc. v. Amimefun Store,* 2020 WL 2097624, at *5 (S.D.N.Y. May 1, 2020) (finding email service was "indubitably effective in this case" because plaintiff had received registered receipts from RPost confirming that the service emails were sent to, delivered to, and received by, each recipient, and defendants "engaged in online business and regularly communicated with customers through email."). Email service is particularly appropriate where a defendant conducts business exclusively over the internet. *See Philip Morris USA Inc. v. Veles Ltd.*, 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007) (authorizing service by email where "defendants conduct business extensively… through their Internet websites and correspond regularly with customers via email" and rejecting "[d]efendants' objections about theoretical reliability of email service" where plaintiff "amply demonstrated the high likelihood that defendants would receive and respond to email communications").

Additionally, courts have approved service in China by internet publication. *See Allstar Mktg. Grp.,* 2021 WL 3501011, at *4 (approving service *via* website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com); *Smart Study Co. v. Beijing Longteng Yunqi Trade Co.,* 2021 WL 2737392, at *5 (S.D.N.Y. July 1, 2021) (same); *Berlutishoeoutlet.com,* 2020 WL 6078055, at *2 ("Defendants have at least one known and valid form of electronic contact and Plaintiffs have created a website for the sole purpose of providing notice of this action to Defendants. The address to this website will be provided to Defendants through their known e-mail accounts and onsite contact forms embedded in Defendants' respective websites"). Moreover, the Second Circuit has found that service by publication is reasonably likely

16

to come to the defendant's attention, especially where, the defendant already has actual notice of the litigation. *Gurung*, 279 F.R.D. at 215; *Anticevic*, 2009 WL 361739 (publication of service in the three proposed newspapers, which were widely circulated in Germany and Croatia, would apprise defendant, who may have already had actual knowledge of the case, of the pendency of the current action); *Smith v. Islamic Emirate of Afg*., 2001 WL 1658211, at *3 (S.D.N.Y. Dec. 26, 2001) (finding likelihood that defendant was aware suits would be filed against him supported permitting service by publication).

Finally, courts in this Circuit regularly accept social media platforms as alternative means of service. *See, e.g., Hardin*, 2020 WL 5236941 (LinkedIn); *Bibox*, 2020 WL 4586819, at *2-*3 (various social media accounts); *Monbo,* 2019 WL 2436296, at *2 (Twitter); *PCCare247*, 2013 WL 841037, at *6 (Facebook); *PCCare247,* 2013 WL 841037, at *6 ("Where defendants run an online business, communicate with customers via email, and advertise their business on their Facebook pages, service by email and Facebook together presents a means highly likely to reach defendants.").

Those standards confirm that Plaintiff's requested service methods are appropriate under Rule 4(f)(3). Specifically, Plaintiff seeks to serve the Unserved Defendants *via* the following methods:

- **Haitong:** Service was unsuccessful pursuant to the Hague Convention and in the U.S., therefore, Plaintiff seeks to serve Haitong through: (i) Email for registered agent: Sean.Forbes@us.htisec.com; (ii) Linked Profile of registered agent: https://www.linkedin.com/in/sean-m-forbes-4b8b0a10; (iii) Linked Profile of Haitong's sister company, Haitong International Securities Group Limited (HIS Group): https://hk.linkedin.com/company/haitong-securities-international-securities-group; (iv) corporate portal for general inquires: http://www.htisec.com/en-us/contact-us/general-enquiry; and (iv) potential email addresses associated with HIS Group, including: (a) group@htisec.com; (b) ir@htisec.com; (c) cashequities@htisec.com; (d) japan.enquiry@htisec.com; (e) sg-enquiry@htisec.com; (f) info@uk.htisec.com; (g) india-enquiry@htisec.com; (h) csdept@htisec.com; (i) media@htisec.com; (j) DL-ED-ALL@htisec.com; (k) laf.contact@htisec.com; (l) ficc.mo@htisec.com; (m)

htiam@htisec.com; (n) htiim@htisec.com; and (o) corpfin@htisec.com. Plaintiff also seeks to serve Haitong by publishing the requisite documents to a dedicated webpage, designed exclusively to notify the Unserved Defendants of the pendency of this litigation, found at: https://qutoutiaosecuritieslitigation.com/.

- **Lighthouse:** Service pursuant to the Hague Convention is still pending, and Plaintiff's attempt to effectuate service on Lighthouse at the only publicly available address in the U.S. was unsuccessful. Therefore, Plaintiff seeks to serve Lighthouse through: (i) email addresses associated with Lighthouse, including: (a) bp@lighthousecap.cn; (b) ir@lighthousecap.cn; (c) pr@lighthousecap.cn; (d) info@lighthousecapital.cn; and (e) Gang.qin@lighthousecapital.cn; (ii) the LinkedIn Profile of Lighthouse: https://www.linkedin.com/company/lighthousecap; and (iii) publication of the requisite documents to a dedicated webpage, designed exclusively to notify the Unserved Defendants of the pendency of this litigation, found at: https://qutoutiaosecuritieslitigation.com/.

- **Tan:** Service has already been effectuated on the high-level employee's corporate entity (ECF No. 27), and Plaintiff has updated the Hague Request to serve Tan at his last known address, however, the request is still pending. Further, Plaintiff's attempt to effectuate service at the only publicly available U.S. address associated with Tan, was unsuccessful. Therefore, Plaintiff seeks to serve Tan through: (i) his Facebook Profile: https://www.facebook.com/siliang.tan; (ii) his LinkedIn Profile: https://www.linkedin.com/in/siliangtan/; and (iii) QTT's official email through which the Company (and Tan as a co-founder and CEO) communicates with investors: ir@qutoutiao.net. Plaintiff also seeks to serve Tan by publishing the requisite documents to a dedicated webpage, designed exclusively to notify the Unserved Defendants of the pendency of this litigation, found at: https://qutoutiaosecuritieslitigation.com/.

- **L. Li:** Service has already been effectuated on the high-level employee's corporate entity (ECF No. 27), and Plaintiff has updated the Hague Request to serve L. Li at his last known address, however, the request is still pending. Therefore, Plaintiff seeks to serve L. Li through: (i) QTT's official email through which the Company (and L. Li as a co-founder and Director) communicates with investors: ir@qutoutiao.net; and (ii) publication of the requisite documents to a dedicated webpage, designed exclusively to notify the Unserved Defendants of the pendency of this litigation, found at: https://qutoutiaosecuritieslitigation.com/.

- **F. Li:** Service has already been effectuated on the high-level employee's corporate entity (ECF No. 27), and although F. Li is still serving as a Director of the Company, Plaintiff's request to serve F. Li at QTT's headquarters, pursuant to the Hague Convention, was unsuccessful. Plaintiff has updated the Hague Request to serve F. Li at his last known address, however, the request is still pending. Therefore, Plaintiff seeks to serve F. Li through: (i) potential email addresses associated with F. Li and his support staff, including: (a) fli@saif.sjtu.edu.cn; (b) feng@umich.edu; and (c) cyjin@saif.sjtu.edu.cn; (ii) his LinkedIn Profile: https://www.linkedin.com/in/feng-li-a085b9a; (iii) QTT's official email through which the Company (and F. Li as a

Director) communicates with investors: ir@qutoutiao.net; and (iv) publication of the requisite documents to a dedicated webpage, designed exclusively to notify the Unserved Defendants of the pendency of this litigation, found at: https://qutoutiaosecuritieslitigation.com/.

- **Dong:** Service has already been effectuated on the high-level employee's corporate entity (ECF No. 27), and Plaintiff has updated the Hague Request to serve Dong at his last known address, however, the request is still pending. Therefore, Plaintiff seeks to serve Dong through: (i) QTT's official email through which the Company (and Dong as a Director) communicates with investors: ir@qutoutiao.net; and (ii) publication of the requisite documents to a dedicated webpage, designed exclusively to notify the Unserved Defendants of the pendency of this litigation, found at: https://qutoutiaosecuritieslitigation.com/.

- **Zhu:** Service has already been effectuated on the high-level employee's corporate entity (ECF No. 27), and Plaintiff has updated the Hague Request to serve Zhu at his last known address, however, the request is still pending. Therefore, Plaintiff seeks to serve Zhu through: (i) QTT's official email through which the Company (and Zhu as CFO and Director) communicates with investors: ir@qutoutiao.net; and (ii) publication of the requisite documents to a dedicated webpage, designed exclusively to notify the Unserved Defendants of the pendency of this litigation, found at: https://qutoutiaosecuritieslitigation.com/.

- **Peng:** Service has already been effectuated on the high-level employee's corporate entity (ECF No. 27), and although Peng is still serving as a Director of the Company, Plaintiff's request to serve him at QTT's headquarters, pursuant to the Hague Convention, was unsuccessful. Further, Plaintiff effectuated service on Peng at the only publicly available U.S. address associated with Peng, at the company he founded and serves as the CEO, CFO and Secretary for, Pony.ai (ECF No. 70), however, to date, Peng has not entered an appearance in this action. Therefore, Plaintiff seeks to serve Peng through: (i) his LinkedIn Profile: https://www.linkedin.com/in/james-peng-a6194b13; (ii) the social media accounts associated with Pony.ai, including: (a) Facebook: https://www.facebook.com/PonyAITech/?view_public_for=113349486881463; (b) LinkedIn: https://www.linkedin.com/company/pony-ai; and (c) Twitter: https://twitter.com/ponyai_tech?lang=en; and (iii) email addresses associated with Pony.ai, including: (a) contacts@pony.ai; and (b) media@pony.ai; and (v) QTT's official email through which the Company (and Peng as a Director) communicates with investors: ir@qutoutiao.net. Plaintiff also seeks to serve Peng by publishing the requisite documents to a dedicated webpage, designed exclusively to notify the Unserved Defendants of the pendency of this litigation, found at: https://qutoutiaosecuritieslitigation.com/.

- **Wang:** Service pursuant to the Hague Convention has been pending since March 2021. Plaintiff has remained diligent in his investigation, updating Wang's foreign address with the CCA, as information is gathered. Because there is no guarantee that Plaintiff's request will be successful and any response will likely come after an unreasonable

delay, Plaintiff seeks to serve Wang through: (i) Wang's email address: wangjingbo@agora.io; (ii) his LinkedIn Profile: https://hk.linkedin.com/in/wangjingbo; (iii) the social media accounts associated with the company Wang currently serves as CFO for, Agora.io, including: (a) Facebook: https://www.facebook.com/AgoraIO/; (b) LinkedIn: https://www.linkedin.com/company/agora-lab-inc/; and (c) Twitter: https://twitter.com/AgoraIO; (iv) Agora.io's official email through which the company (and Wang as CFO) communicates with investors: investor@agora.io; and (v) Agora.io's corporate portal offered as a means of contacting the company and its employees: https://investor.agora.io/resources/contact-ir. Plaintiff also seeks to serve Wang by publishing the requisite documents to a dedicated webpage, designed exclusively to notify the Unserved Defendants of the pendency of this litigation, found at: https://qutoutiaosecuritieslitigation.com/.

- **Dai:** Plaintiff received confirmation that his first attempt to serve Dai, pursuant to the Hague Convention, was unsuccessful, therefore, Plaintiff had to start over and submit a new request with another potential foreign address associated with Dai. Because there is no guarantee that Plaintiff's second request will yield any better results than the first, and response is likely to come only after an unreasonable delay, Plaintiff seeks to serve Dai through: (i) the email address for the company Dai serves as the Managing Partner for, Shenzhen Country Garden Innovation Investment, Country Garden Venture Capital: cgvc@countrygarden.com.cn; (ii) the LinkedIn Profile a company Dai is also associated with as a managing partner, Shenzhen Paladin Asset Management: https://www.linkedin.com/company/帕拉丁资产/; and (iii) publication of the requisite documents to a dedicated webpage, designed exclusively to notify the Unserved Defendants of the pendency of this litigation, found at: https://qutoutiaosecuritieslitigation.com/.

- **Jiang:** Service pursuant to the Hague Convention has been pending since March 2021. Plaintiff has remained diligent in his investigation, updating Jiang's foreign address with the CCA, as information is gathered. Because there is no guarantee that Plaintiff's request will be successful and any response will likely come after an unreasonable delay, Plaintiff seeks to serve Jiang through: (i) the email address for the company Jiang serves as operational director for, Chengwei Capital: bp@chengwei.com; (ii) Chengwei Capital's LinkedIn Profile: https://www.linkedin.com/company/chengwei-capital; and (iii) publication of the requisite documents to a dedicated webpage, designed exclusively to notify the Unserved Defendants of the pendency of this litigation, found at: https://qutoutiaosecuritieslitigation.com/.

Each method is reasonably calculated to notify the Unserved Defendants. QTT was properly served a year ago (ECF No. 27), and the Company disclosed the litigation in its public filings, which were certified by Defendants Tan and Zhu. Therefore, it is a near certainty that the Unserved Defendants have notice, and the multiple means of alternative service will provide

additional notice, consistent with due process and without violating international law.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion to effectuate service by alternative means pursuant to Rule 4(f)(3) on the Unserved Defendants.

DATED: December 1, 2021                   Respectfully Submitted,

**ROCHE FREEDMAN LLP**

*/s/ Constantine P. Economides*
Constantine P. Economides
Ivy T. Ngo (*pro hac vice*)
Velvel (Devin) Freedman (*pro hac vice*)
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
Telephone: (305) 971-5943
ceconomides@rochefreedman.com
ingo@rochefreedman.com
vel@rochefreedman.com

Eric Rosen
Kyle Roche
99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (646) 350-0527
erosen@rochefreedman.com
kyle@rochefreedman.com

*Counsel for Plaintiff and Lead Counsel
for the Class*

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac vice* forthcoming)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on December 1, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ Constantine P. Economides*
Constantine P. Economides